1   Aaron D. Aftergood (239853)
        aaron@aftergoodesq.com
2   **THE AFTERGOOD LAW FIRM**
    1880 Century Park East, Suite 200
3   Los Angeles, CA 90067
    Telephone: (310) 550-5221
4   Facsimile: (310) 496-2840

5   Taylor T. Smith*
        tsmith@woodrowpeluso.com
6   **WOODROW & PELUSO, LLC**
    3900 East Mexico Avenue, Suite 300
7   Denver, Colorado 80210
    Telephone: (720) 213-0675
8   Facsimile: (303) 927-0809

9   *Pro Hac Vice* admission to be filed

10  Attorneys for Plaintiff Bryce Abbink
    and the Classes

11

12                  **UNITED STATES DISTRICT COURT**

13      **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

14

| | |
|---|---|
| 15   **Bryce Abbink,** individually and on behalf of all others similarly situated, | Case No. |
| 16 | |
| 17                                   Plaintiff, | **CLASS ACTION COMPLAINT** |
| 18 | |
| 19   v. | **JURY TRIAL DEMANDED** |
| 20   **Experian Information Solutions, Inc.**, an Ohio corporation, **Lend Tech** | |
| 21   **Loans, Inc.**, a California corporation, and **Unified Document Services, LLC**, | |
| 22   a California Limited Liability | |
| 23   Company, | |
| 24 | |
| 25                                  Defendant. | |

26          Plaintiff Bryce Abbink ("Plaintiff" or "Abbink") brings this class action

27  complaint against Defendants Experian Information Solutions, Inc. ("Experian"),

28  Lend Tech Loans, Inc. ("Lend Tech Loans"), and Unified Document Services, LLC

**CLASS ACTION COMPLAINT**              - 1 -

1  ("UDS") (collectively "Defendants") to obtain redress for, and to put an end to,

2  Defendants' serial violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et*

3  *seq.* ("FCRA" or "Act"). Specifically, Plaintiff files the instant lawsuit to put an end

4  to: (1) Experian's practice of providing consumer reports to persons who have no

5  permissible purpose for obtaining them, (2) Lend Tech Loans' practice of procuring

6  consumer reports absent any permissible purpose and then reselling those reports to

7  persons with no permissible purpose, (3) UDS's practice of procuring consumer

8  reports absent any permissible purpose, utilizing the reports to solicit consumers to

9  purchase its services, and failing to provide a proper Opt-Out Notice, and (4) to

10 obtain redress for all individuals injured by the Defendants' separate and collective

11 conduct. Plaintiff, for his Class Action Complaint, alleges as follows upon personal

12 knowledge as to himself and his own acts and experiences, and, as to all other

13 matters, upon information and belief, including investigation conducted by his

14 attorneys.

15                              **NATURE OF THE ACTION**

16        1.      Enacted to promote the accuracy, fairness, and privacy of consumer

17 information contained in the files of consumer reporting agencies, the FCRA

18 explicitly protects consumers from disclosure of their personal information contained

19 in their consumer reports. To that end, a consumer reporting agency may only

20 provide a consumer report to persons who have a permissible purpose. Further,

21 persons intending to procure a consumer report for any purpose must actually

22 possess a permissible purpose for requesting and obtaining the consumer report.

23        2.      Defendant Experian willfully violated the FCRA by: (1) furnishing

24 consumer reports regarding consumers' personal student loan amounts to Lend Tech

25 Loans absent any permissible purpose, and (2) failing to conduct a reasonable

26 inquiry into Lend Tech Loans and its supposed permissible purpose prior to

27 disclosing consumers' information.

28

**CLASS ACTION COMPLAINT**          - 2 -

3.      Defendant Lend Tech Loans willfully violated the FCRA by procuring consumer reports regarding consumers nationwide absent any permissible purpose, or for the purpose of reselling their consumer reports to companies who likewise do not possess a permissible purpose.

4.      Defendant UDS willfully violated the FCRA by: (1) obtaining consumer reports regarding consumers nationwide absent any permissible purpose, (2) utilizing the consumer reports to target consumers nationwide to purchase its document preparation service, and (3) failing to provide consumers with a proper Opt-Out Notice, which would apprise consumers of the source of their debt-related information and the ability to opt-out of future solicitations.

5.      Experian is a major consumer reporting agency. Experian generates a substantial portion of its income by aggregating the data of millions of consumers worldwide and then selling that information to banks, credit card companies, and various other companies that have a permissible purpose. The process is as follows: a company may contact Experian and request that Experian provide it a list of consumers who meet a specific set of criteria. Experian, after conducting a search to ascertain whether the requester has a permissible purpose under the FCRA and concluding that such a permissible purpose indeed exists, will then provide the list, or the requested consumer reports, to the company for a fee.

6.      In this case, the Defendants worked together to deprive Plaintiff and the Classes of similarly situated individuals of their privacy rights absent any permissible purpose whatsoever.

7.      That is, Experian accepted Lend Tech Loans' blanket assertion that Lend Tech either had a permissible purpose for obtaining the consumer reports or that it, Lend Tech, would resell the consumer reports to other companies that did. A quick review of Lend Tech Loans and its business practices would have revealed that neither of these suggestions could be true. That is, Lend Tech Loans claims that it is a mortgage lender on its most recent California business filing. However, a search of

1  both the National Multistate Licensing System ("NMLS") as well as the California
2  Department of Business Oversight license system reveals that Lend Tech Loans does
3  not possess any license whatsoever to engage in mortgage lending or any financial
4  service for that matter.

5       8.     Further, Lend Tech Loans supplied Experian with a nonworking
6  telephone number and its prior business address rather than the address listed on its
7  most current California business filing or any working telephone number.

8       9.     Despite all these red flags, Experian provided Plaintiff's consumer
9  report along with the consumer reports of the class members to Lend Tech Loans. In
10 doing so, Experian profited off of the sale of the information.

11      10.    Lend Tech Loans next undertook to distribute the consumer report
12 information that it obtained about Plaintiff and the class members to co-Defendant
13 UDS absent any permissible purpose.

14      11.    UDS, in turn, utilized the consumer reports to direct a solicitation
15 entitled "Student Loan Consolidation & Payment Reduction Program" to Plaintiff
16 and the class members. (*See* UDS Notice, a true and accurate copy of which is
17 attached hereto as Ex. A.)

18      12.    The UDS Notice informed consumers of their potential eligibility for
19 consolidation of their federal student loans and included the total sum of the federal
20 student loans. (*See* Ex. A.) Further, the UDS Notice informed recipients that this was
21 their "Final Notice" to consolidate their loans and is written/formatted to appear as
22 though an entity related to or affiliated with the Department of Education had sent
23 the notices. (*See Id.*) Upon reviewing the fine print, recipients are informed that the
24 UDS Notice is simply a "private, fee-based application assistance to aid consumers
25 applying for government offered programs." (*See Id.*)

26      13.    UDS's "fee-based application assistance" works as follows: The service
27 entails charging consumers a fee to assist them by completing documents and
28 applying for federal student loan programs that consumers may easily apply for

1  themselves for free. Notably, the Department of Education warns consumers not to

2  fall for the deceptive practices of UDS and describes such companies as

3  "fraudsters."[1] In short, UDS willfully violated the FCRA by procuring consumer

4  reports absent any permissible purpose and then using the information to facilitate its

5  questionable business practices.

6      14.    Further, UDS willfully violated the FCRA by failing to provide a proper

7  opt-out notice as required by the FCRA.

8      15.    As a result of Defendants' willful violations of the FCRA, Plaintiff

9  Abbink and the members of the Classes were deprived of their privacy rights

10 guaranteed to them by federal law, and they are thus entitled to statutory damages of

11 at least $100 and not more than $1,000 for each willful violation. *See* 15 U.S.C. §

12 1681n(a)(1)(A).

13                                **PARTIES**

14     16.    Plaintiff Abbink is a natural person and citizen of the State of Colorado.

15 He resides in Denver, Denver County, Colorado.

16     17.    Defendant Experian Information Solutions, Inc. is an Ohio corporation

17 with its principal place of business located at 475 Anton Blvd., Costa Mesa,

18 California 92626.

19     18.    Defendant Lend Tech Loans, Inc. is a California corporation with its

20 principal places of business located at 1851 E. First St., #810, Santa Ana, California

21 92705.

22     19.    Defendant Unified Document Services, LLC is a California limited

23 liability company with its principal place of business located at 1560 Brookhollow

24 Dr., Suite 220, Santa Ana, California 92705.

25                     **JURISDICTION AND VENUE**

26

27

28

---

[1] https://studentaid.ed.gov/sa/repay-loans/avoiding-loan-scams

**CLASS ACTION COMPLAINT**        - 5 -

20.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, which is a federal statute. Furthermore, jurisdiction is proper under the Class Action Fairness Act, 28 U.S.C. § 1332(d), *et seq.* ("CAFA"), because the classes each consist of over 100 people, at least one member of each class is from a State other than California (the state of the Defendants), and the amounts in controversy are over $5,000,000. Further, none of the exceptions to CAFA jurisdiction apply.

21.     This Court has personal jurisdiction over Defendants because they conduct substantial business in this District, are all headquartered or reside in this District, and the unlawful conduct alleged in the Complaint emanated from this District.

22.     Venue is proper in this District under 28 U.S.C. § 1391 because all Defendants reside in this District and a substantial part of the events and omissions giving rise to the claims occurred in or emanated from this District.

## FACTS COMMON TO PLAINTIFF AND ALL COUNTS

23.     Experian is a consumer reporting agency that collects and aggregates information about consumers world-wide.

24.     Lend Tech Loans is a California corporation that supposedly engages in the business of mortgage lending. On information and belief, Lend Tech Loans does not possess any financial license to engage in mortgage lending in the State of California.

25.     UDS is a California limited liability company that provides document preparation services for consumers who seek student loans debt consolidation or forgiveness. UDS is not a financial institution, bank, or lender and does not underwrite loans.[2]

_____

[2] https://www.unifieddocumentservices.com/

**CLASS ACTION COMPLAINT**          - 6 -

26. In or around January 2019, Lend Tech Loans submitted a request to Experian to obtain information contained in Abbink's consumer report.

27. On or around January 21, 2019, Experian caused information contained in Plaintiff Abbink's consumer report to be released to Lend Tech Loans.

28. Lend Tech Loans did not have Abbink's authorization to pull his credit report nor did Lend Tech Loans have any permissible purpose to request such information. Further, Lend Tech Loans does not offer consumers any form of credit or insurance.

29. For its part, Experian failed to implement reasonable procedures to limit the furnishing of consumer reports for permissible purposes. That is, Experian failed to make a reasonable effort to verify the identity of Lend Tech Loans or to verify the purpose for which Lend Tech Loans intended to use the consumer report regarding Abbink.

30. Rather, Experian accepted the supposed permissible purpose at face value and sold Plaintiff Abbink's consumer report to Lend Tech Loans without performing any adequate investigation.

31. Shortly thereafter, on information and belief, Lend Tech Loans sold, or otherwise transmitted, Plaintiff Abbink's consumer report information to UDS.

32. On or around January 25, 2019, UDS mailed Plaintiff Abbink a letter soliciting him to purchase its "fee-based application assistance" service. For a substantial fee, UDS offered to complete documents on behalf of consumers to consolidate their student loans. The services that UDS attempted to solicit Plaintiff to purchase are easily completed online for free via the Department of Education. Unsurprisingly, the Department of Education warns consumers not to fall for the deceptive practices of companies, such as UDS, and describes such outfits as "fraudsters who are after your money."[3]

---

[3] https://studentaid.ed.gov/sa/repay-loans/avoiding-loan-scams

CLASS ACTION COMPLAINT            - 7 -

33. UDS had no permissible purpose for obtaining, possessing, or using Plaintiff's consumer report.

34. Because of the failure to provide any possible permissible purpose, Plaintiff brings this suit, on behalf of himself and those similarly situated, to put an end to Defendants' repeated and widespread FCRA violations. Such violations entitle him, and other similarly situated persons, to statutory damages of not less than $100 and not more than $1,000 per violation.

## CLASS ACTION ALLEGATIONS

35. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure Rule 23(b)(3) on behalf of himself and three nationwide Classes defined as follows:

**Experian Class:** All persons in the United States (1) from a date two years prior to the filing of the initial complaint in this action to the date notice is sent to the Experian Class; (2) about whom Experian provided a consumer report; (3) to Lend Tech Loans; (4) where the purported permissible purpose for obtaining the consumer report was the same as the purported permissible purpose that was claimed to obtain Plaintiff's consumer report.

**Lend Tech Loans Class:** All persons in the United States (1) from a date two years prior to the filing of the initial complaint in this action to the date notice is sent to the Lend Tech Loans Class; (2) about whom Lend Tech Loans obtained a consumer report; (3) where the purported permissible purpose for obtaining the consumer report was the same as the purported permissible purpose that was claimed to obtain Plaintiff's consumer report.

**UDS Class:** All persons in the United States who (1) from a date two years prior to the filing of the initial complaint in this action to the date notice is sent to the UDS Class; (2) received a letter from UDS substantially similar to Ex. A; (3) about whom UDS obtained a consumer report; and (4) where the purported permissible purpose for obtaining and using the consumer report was the same as the purported permissible purpose that was claimed to obtain Plaintiff's consumer report.

36. Excluded from the Classes are (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants

1  or their parents have a controlling interest, and those entities' officers and directors,

2  (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or

3  Magistrate Judge's immediate family, (3) persons who execute and file a timely

4  request for exclusion, (4) persons who have had their claims in this matter finally

5  adjudicated and/or otherwise released, and (5) the legal representatives, successors,

6  and assigns of any such excluded person. Plaintiff anticipates the need to amend the

7  Complaint following a reasonable period for class discovery.

8          37.    **Numerosity:** The exact numbers of the members of the Classes are

9  unknown to Plaintiff at this time, but it is clear that individual joinder is

10 impracticable. On information and belief, Defendants have procured consumer

11 reports regarding thousands of individuals. Further, the class members can readily be

12 ascertained through Defendants' records.

13         38.    **Commonality:** Common questions of law and fact exist as to all

14 members of the Classes for which this proceeding will provide common answers in a

15 single stroke based upon common evidence, including:

16         (a)    Whether Experian's conduct described herein violated the FCRA;

17         (b)    Whether Lend Tech Loans' conduct described herein violated the

18                FCRA;

19         (c)    Whether UDS's conduct described herein violated the FCRA;

20         (d)    Whether Lend Tech Loans possessed any permissible purpose to obtain

21                Plaintiff's and the Class Members' consumer reports;

22         (e)    Whether UDS possessed any permissible purpose to obtain and use

23                Plaintiff's and the Class Members' consumer reports;

24         (f)    Whether Experian conducted a reasonable inquiry into the identity of

25                Lend Tech Loans or its purported permissible purpose; and

26         (e)    Whether Defendants have acted willfully.

27         39.    **Typicality:** As a result of Defendants' uniform and repeated pattern of

28 providing, procuring, and using consumer reports absent any permissible purpose,

Plaintiff and the Class Members suffered the same injury and similar damages. If Defendants' actions violated the FCRA as to Plaintiff, then they violated the FCRA as to all Class Members. Thus, Plaintiff's claims are typical of the claims of the other Class Members.

40. **Adequate Representation:** Plaintiff is a member of the Classes and both he and his counsel will fairly and adequately represent and protect the interests of the Classes, as neither has interests adverse to those of the Class Members and Defendants have no defenses unique to Plaintiff. In addition, Plaintiff has retained counsel competent and experienced in complex litigation and class actions. Further, Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and they have the financial resources to do so.

41. **Predominance:** The common questions of law and fact set forth above go to the very heart of the controversy and predominate over any supposed individualized questions. Irrespective of any given Class Member's situation, the answer to whether Defendants' conduct described herein repeatedly violated the FCRA is the same for everyone—a resounding "yes"—and the same will be proven using common evidence.

42. **Superiority and Manageability:** A class action is superior to all other methods of adjudicating the controversy. Joinder of all class members is impractical, and the damages suffered by/available to the individual Class Members will likely be small relative to the cost associated with prosecuting an action. Thus, the expense of litigating an individual action will likely prohibit the Class Members from obtaining effective relief for Defendants' misconduct. In addition, there are numerous common factual and legal questions that could result in inconsistent verdicts should there be several successive trials. In contrast, a class action will present far fewer management difficulties, as it will increase efficiency and decrease expense. Further, class-wide adjudication will also ensure a uniform decision for the Class Members.

CLASS ACTION COMPLAINT          - 10 -

43.     Plaintiff reserves the right to revise the definition of the Classes as necessary based upon information obtained in discovery.

## COUNT I
### Violation of 15 U.S.C. § 1681b, *et seq.* & § 1681e, *et seq.*
### (On Behalf of Plaintiff and the Experian Class)

44.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

45.     The FCRA declares that when furnishing consumer reports that are not initiated by a consumer:

A consumer reporting agency may furnish a consumer report relating to any consumer pursuant to subparagraph (A) or (C) or subsection (a)(3) in connection with any credit or insurance transaction that is *not initiated by the consumer only if*—

>    (A)  the consumer authorizes the agency to provide such report to such person; or

>    (B)  (i) the transaction consists of a firm offer of credit or insurance;

>          (ii) the consumer reporting agency has complied with subsection (e). . . .

15 U.S.C. § 1681b(c)(1)(A)-(B) (emphasis added).

46.     Subsection (e) of the FCRA requires:

Every consumer reporting agency shall maintain reasonable procedures designed . . . to limit the furnishing of consumer reports to the purposes listed under section 1681b of this title. These procedures shall require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose. *Every consumer reporting agency shall make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report.* No consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the

consumer report will not be used for a purpose listed in section 1681b of this title.

15 U.S.C. § 1681e(a) (emphasis added).

47.     Plaintiff never authorized Experian to provide his consumer report to Lend Tech Loans for any reason.

48.     On information and belief, Experian furnished Plaintiff's consumer report to Lend Tech Loans based on Lend Tech Loans representation that it intended to use Plaintiff's consumer report for the purpose of a firm offer of credit or insurance.

49.     At no point did Lend Tech Loans possess any permissible purpose to obtain Plaintiff's consumer report or any information contained therein.

50.     Plaintiff does not have any relationship with Lend Tech Loans, has never conducted any business with Lend Tech Loans, and has never provided any authorization to Lend Tech Loans to obtain his consumer report.

51.     Thus, Experian violated §1681b(c)(1) by providing Plaintiff Abbink's consumer report to Lend Tech Loans absent any permissible purpose.

52.     Likewise, Experian violated § 1681e(a) by failing to implement reasonable procedures to limit the furnishing of consumer reports for a permissible purpose. Moreover, Experian violated § 1681e(a) by failing to make a reasonable effort to verify the identity of Lend Tech Loans and the supposed permissible purpose for which the information was being sought.

53.     Lend Tech Loans, while representing that it is a mortgage lender, does not possess any license to conduct any financial services. The National Multistate Licensing System ("NMLS") and the California Department of Business Oversight license system are publically available for any person to search. A quick review of both systems reveals that Lend Tech Loans does not possess any license to conduct any financial services or mortgage lending or originating in the State of California.

54.     Further, Lend Tech Loans does not engage in insurance underwriting.

55.    Additionally, Lend Tech Loans provided inaccurate information to Experian, which Experian then published on Plaintiff's and the class members' consumer reports. That is, Lend Tech Loans provided a nonworking telephone number and a business address that does not match the current address on its California business filing.

56.    Had Experian conducted a reasonable search to ascertain both the identity of Lend Tech Loans or its purported permissible purpose, it would have been aware of the litany of red flags.

57.    Instead, Experian accepted Lend Tech Loans' supposed permissible purpose at face value.

58.    Moreover, on information and belief, Experian has accepted Lend Tech Loans' requests for class members student loan information on multiple occasions.

59.    Experian's violation of 15 U.S.C. § 1681b(c)(1) was willful for at least the following reasons:

> (i)    The rule that consumer reports may only be obtained for a permissible purpose has been the law established for well over a decade;
>
> (ii)    The rule that consumer reporting agencies must maintain procedures to limit the furnishing of consumer reports to only the purposes listed under Section 1681b of this title has also been the law for well over a decade;
>
> (iii)    Experian is a large corporation who regularly engages inside and outside counsel—it had ample means and opportunity to seek legal advice regarding its FCRA responsibilities. As such, any violations were made in conscious disregard of the rights of others;
>
> (iv)    Experian regularly engages in providing consumer reports to businesses, such as Lend Tech Loans, for the purpose of

marketing their products goods and services. Accordingly, Experian's failure to implement reasonable procedures had a wide spread effect; and

(v) Experian profited off the sale of Plaintiff's and the class members' personal student loan information contained in consumer reports on a repeated basis.

60. Plaintiff and the Experian Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each of Experian's willful violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

61. Accordingly, under the FCRA, Plaintiff and the Experian Class seek statutory damages, reasonable cost and attorneys' fees, and such other relief as the Court deems necessary, reasonable, and just.

<u>**COUNT II**</u>
**Violation of 15 U.S.C. § 1681b(c), *et seq.***
**(On Behalf of Plaintiff and the Experian Class)**

62. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

63. The FCRA limits what information can be provided when furnishing consumer reports that are not initiated by a consumer stating:

(2) Limits on information received under paragraph (1)(B)

A person may receive pursuant to paragraph (1)(B) only—

(A) the name and address of a consumer;

(B) an identifier that is not unique to the consumer and that is used by the person solely for the purpose of verifying the identity of the consumer; and

(C) *other information pertaining to a consumer that does not identify the relationship or experience of the consumer with respect to a particular creditor or other entity.*

15 U.S.C. § 1681b(c)(2) (emphasis added).

64.     On or around January 21, 2019, Experian provided Plaintiff's and the Class Members' consumer reports to Lend Tech Loans.

65.     On information and belief, Experian provided the total sum of federal student loan debt that Plaintiff and each Class Member possesses.

66.     The total sum of federal student loan debt directly identifies the relationship or experience of Plaintiff and the Class Members to a particular creditor or other entity. That is, federal student loan debt is owned/held by one creditor or entity, the U.S. Department of Education. Further, the federal student loans are provided for only one purpose, education expenses.

67.     Therefore, Experian provided Lend Tech Loans with information that relates to Plaintiff's and the Class Members' relationship or experience with the U.S. Department of Education, a specific creditor or entity, in violation of Section 1681b(c)(2)(C).

68.     These violations were willful in that Experian knew or should have known its interpretation or evaluation/implementation of the law ran a risk of noncompliance that was greater than simply a negligent reading.

69.     Plaintiff and the Experian Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each of Experian's willful violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

70.     Accordingly, under the FCRA, Plaintiff and the Experian Class seek statutory damages, reasonable cost and attorneys' fees, and such other relief as the Court deems necessary, reasonable, and just.

### COUNT III
**Violation of 15 U.S.C. § 1681b, *et seq.* & § 1681e, *et seq.***
**(On Behalf of Plaintiff and the Lend Tech Loans Class)**

71.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

72.     The FCRA provides that:

A person shall not use or obtain a consumer report for any purpose unless--

(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and

(2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

15 U.S.C. 1681b(f).

73.     The FCRA further provides:

(1) Disclosure.--A person may not procure a consumer report for purposes of reselling the report (or any information in the report) unless the person discloses to the consumer reporting agency that originally furnishes the report--

(A) the identity of the end-user of the report (or information); and

(B) each permissible purpose under section 1681b of this title for which the report is furnished to the end-user of the report (or information).

(2) Responsibilities of procurers for resale.--A person who procures a consumer report for purposes of reselling the report (or any information in the report) shall--

(A) establish and comply with reasonable procedures designed to ensure that the report (or information) is resold by the person only for a purpose for which the report may be furnished under section 1681b of this title, including by requiring that each person to which the report (or information) is resold and that resells or provides the report (or information) to any other person--

(i) identifies each end user of the resold report (or information);

(ii) certifies each purpose for which the report (or information) will be used; and

(iii) certifies that the report (or information) will be used for no other purpose; and

(B) before reselling the report, make reasonable efforts to verify the identifications and certifications made under subparagraph (A).

15 U.S.C. 1681e(e).

74.     On or around January 21, 2019, Lend Tech Loans procured a consumer report regarding Plaintiff.

75.     In violation of Section 1681b(f), Lend Tech Loans did not possess any permissible purpose to obtain a consumer report regarding Plaintiff or any of the similarly situated class members.

76.     Further, to the extent that Lend Tech Loans procured the consumer reports for the express purpose of resale, it violated Section 1681e(e) by failing to: (1) implement reasonable procedures to ensure that consumer reports are only sold or conveyed for a permissible purpose; (2) identify the end user(s) of the resold report; and (3) conduct a reasonable search to ensure that the end user(s) of the reports had a permissible purpose.

77.     Here, Lend Tech Loans conveyed Plaintiff's and the class members' consumer reports to UDS absent any permissible purpose.

78.     UDS is a document preparation company, which purports to assist consumers with student loan consolidation.

79.     UDS, by its own admission, is not a financial institution, bank or lender and does not underwrite loans.

80.     In short, had Lend Tech Loans conducted a reasonable search to ascertain UDS's purported purpose, it would have been clear that UDS possessed no permissible purpose to obtain Plaintiff's or any other class members' consumer reports.

81.     Lend Tech Loans's violations of 15 U.S.C. § 1681b(f) & § 1681e(e) were willful for at least the following reasons:

    (i)    The rule that consumer reports may only be obtained for a permissible purpose has been the law established for well over a decade;

    (ii)    Lend Tech Loans is a company that repeatedly engages in the act of procuring consumer reports regarding consumers' student loan debt absent any permissible purpose;

    (iii)    Lend Tech Loans is a corporation that regularly engages counsel—therefore, it had ample means and opportunity to seek legal advice regarding its FCRA responsibilities. As such, any violations were made in conscious disregard of the rights of others;

    (iv)    The rule that persons engaged in the resale of consumer reports maintain procedures to limit the furnishing of consumer reports to only the purposes listed under Section 1681b of this title has also been the law for well over a decade; and

    (v)    Lend Tech Loans profited off the sale of Plaintiff's and the class members' personal student loan information on a repeated basis.

82.     Plaintiff and the Lend Tech Loans Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each of Lend Tech Loans' willful violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

83.     Accordingly, under the FCRA, Plaintiff and the Lend Tech Loans Class seek statutory damages, reasonable cost and attorneys' fees, and such other relief as the Court deems necessary, reasonable, and just.

### COUNT IV
### Violation of 15 U.S.C. § 1681b, *et seq.*
### (On Behalf of Plaintiff and the UDS Class)

84.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

85.     The FCRA provides that:

A person shall not use or obtain a consumer report for any purpose unless--

(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and

(2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

15 U.S.C. 1681b(f).

86.     Plaintiff does not have any relationship with UDS, has never conducted any business with UDS, and has never provided any authorization to UDS to obtain his consumer report.

87.     Regardless, UDS obtained and used Plaintiff's and the class members' consumer reports absent any permissible purpose.

88.     UDS admits, via the fine print on its own website, that it is not a financial institution, bank or lender and does not underwrite loans.[4] Instead, UDS provides document preparation services for consumers who wish to refinance their student loans.

89.     UDS's document preparation service entails charging consumers a substantial fee to complete debt consolidation or forgiveness forms that are free and available via the U.S. Department of Education. Consumers can easily complete the student loan consolidation and forgiveness forms on their own (or with the assistance of the Dept. of Education or their loan servicer). Accordingly, the U.S. Department of Education warns student loan borrowers about companies, such as UDS, that do not provide any meaningful benefit to borrowers.

---

[4] https://www.unifieddocumentservices.com/

**CLASS ACTION COMPLAINT**                    - 19 -

90.    To effectuate its questionable business practices, UDS obtained Plaintiff's and the class members' consumer reports from Lend Tech Loans absent any permissible purpose.

91.    UDS then utilized the consumer reports to solicit Plaintiff and the class members' to purchase its document preparation services.

92.    UDS sent the notice styled "Student Loan Consolidation & Payment Reduction Program" to Plaintiff. (UDS Notice, Ex. A.)

93.    The UDS Notices were filled with a litany of misleading information. That is, the UDS Notice informed Plaintiff that this was his "Final Notice" to consolidate his student loans. (*See* UDS Notice, Ex. A.) The UDS Notice stated that there were "New Laws Discounting Federal Student Loans." (*See Id.*) Further, the notice attempted to persuade consumers to create a Federal Student Aid ID and provide it for UDS with their application. (*See Id.*)

94.    In short, UDS obtained and used Plaintiff's and the class members' consumer reports absent any permissible purpose in violation of Section 1681b(f).

95.    UDS's violation of 15 U.S.C. § 1681b(f) was willful for at least the following reasons:

(i)     The rule that consumer reports may only be obtained for a permissible purpose has been the law established for well over a decade;

(ii)    UDS is a company that repeatedly engages in the act of procuring consumer reports regarding consumers' student loan debt absent any permissible purpose;

(iii)   UDS regularly engages in the act of utilizing consumer reports to solicit consumers to purchase its document preparation service— not a permissible purpose under the FCRA;

(iv)    UDS regularly engages counsel—therefore, it had ample means and opportunity to seek legal advice regarding its FCRA

responsibilities. As such, any violations were made in conscious disregard of the rights of others; and

(v)   UDS profited off the use of Plaintiff's and the class members' consumer reports on a repeated basis.

96.   Plaintiff and the UDS Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each of UDS's willful violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

97.   Accordingly, under the FCRA, Plaintiff and the UDS Class seek statutory damages, reasonable cost and attorneys' fees, and such other relief as the Court deems necessary, reasonable, and just.

## COUNT V
### Violation of 15 U.S.C. § 1681m, *et seq.*
### (On Behalf of Plaintiff and the UDS Class)

98.   Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

99.   The FCRA requires:

(1) Any person who uses a consumer report on any consumer in connection with any credit or insurance transaction that is not initiated by the consumer, that is provided to that person under section 1681b(c)(1)(B) of this title, shall provide with each written solicitation made to the consumer regarding the transaction a clear and conspicuous statement that—

(A) information contained in the consumer's consumer report was used in connection with the transaction;

(B) the consumer received the offer of credit or insurance because the consumer satisfied the criteria for credit worthiness or insurability under which the consumer was selected for the offer;

(C) if applicable, the credit or insurance may not be extended if, after the consumer responds to the offer, the consumer does not meet the criteria used to select the

consumer for the offer or any applicable criteria bearing on credit worthiness or insurability or does not furnish any required collateral;

(D) the consumer has a right to prohibit information contained in the consumer's file with any consumer reporting agency from being used in connection with any credit or insurance transaction that is not initiated by the consumer; and

(E) the consumer may exercise the right referred to in subparagraph (D) by notifying a notification system established under section 1681b(e) of this title.

(2) Disclosure of address and telephone number; format

A statement under paragraph (1) shall—

(A) include the address and toll-free telephone number of the appropriate notification system established under section 1681b(e) of this title; and

(B) be presented in such format and in such type size and manner as to be simple and easy to understand, as established by the Bureau, by rule, in consultation with the Federal Trade Commission, the Federal banking agencies, and the National Credit Union Administration.

15 U.S.C. § 1681m(d).

100.    This requirement is commonly referred to as an "Opt-Out Notice."

101.    On information and belief, UDS obtained Plaintiff Abbink's consumer report for the purported purpose of utilizing the report in connection of a credit transaction.

102.    On or around January 25, 2019, UDS sent a document entitled Student Loan Consolidation & Payment Reduction Program Prepared For: Bryce Abbink. (*See* UDS Notice, Ex. A.)

103.    The UDS Notice attempted to solicit Plaintiff to purchase UDS's services.

104.    The UDS Notice did not provide any form of Opt-Out Notice. (*See* UDS Notice, Ex. A.)

105.    Moreover, the UDS Notice did not inform Plaintiff or individuals similarly situated that they received the solicitation as a result of UDS obtaining their consumer report.

106.    In short, UDS's failure to provide a proper Opt-Out Notice violates Section 1681m(d), and its failure to do so was willful for at least the following reasons:

        a.   The rule that persons who utilize consumer reports in connection with credit transactions not initiated by the consumer has been settled law for well over a decade.

        b.   The Consumer Financial Protection Bureau has promulgated regulations and form notices that have been publically available since 2011. (*See* 12 C.F.R. § 1022.54; *see also* 12 C.F.R. Pt. 1022, App. C.) This readily-available guidance means UDS either was aware of its responsibilities or should have been aware of its responsibilities but ignored them and violated the FCRA anyway.

        c.   UDS is a company that regularly and repeatedly obtains consumer reports for targeted marketing purposes. UDS has had ample opportunity to seek legal advice regarding its FCRA responsibilities. As such, any violations were made in conscious disregard of the rights of others.

107.    Plaintiff and the UDS Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each of UDS's willful violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

108.   Accordingly, under the FCRA, Plaintiff and the UDS Class seek statutory damages and reasonable cost and attorneys' fees and such other relief as the Court deems necessary and just.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Bryce Abbink, individually and on behalf of the Classes, respectfully requests that this Court issue an order:

A.   Certifying this case as a class action on behalf of the Classes defined above, appointing Bryce Abbink as class representative and appointing his counsel as class counsel;

B.   Finding that Defendants' actions constitute repeated and willful violations of the FCRA;

C.   Awarding damages, including statutory and treble damages where applicable, to Plaintiff and the Classes in amounts to be determined at trial;

D.   Awarding Plaintiff and the Classes their reasonable litigation expenses and attorneys' fees;

E.   Awarding Plaintiff and the Classes pre- and post- judgment interest, to the extent allowable;

F.   Such further and other relief as the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: June 21, 2019             **Bryce Abbink**, individually and on behalf of all others similarly situated,

By:   _s/ Aaron D. Aftergood_
One of Plaintiff's Attorneys

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Aaron D. Aftergood (239853)
aaron@aftergoodesq.com
The Aftergood Law Firm
1880 Century Park East, Suite 200
Los Angeles, CA 90067
Telephone: (310) 550-5221
Facsimile: (310) 496-2840

Taylor T. Smith*
tsmith@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

**CLASS ACTION COMPLAINT**                    - 25 -

# EXHIBIT A



**BENEFIT ID: UD14346602**

Address Change? Please contact our
Customer Service Department

# Final
# Notice

Contact: **855-465-6870**

Assigned Department:
Student Loan Department

ılıldılıılıllllılıdılldıdıddılılılıddılılıılılılıllılımlı   73

Bryce Abbink
1164 S. Acoma St. Unit 323
Denver, CO 80210-1646

**NOTICE DATE:** January 25th, 2019

## Student Loan Consolidation & Payment Reduction Program Prepared For:

## <u>Bryce Abbink</u>

*NEW LAWS DISCOUNTING FEDERAL STUDENT LOANS*

Dear Bryce,

Our records indicate that your federal student loans of approximately **$78,500** may be eligible for a consolidation with the U.S. Department of Education. As a federal student loan holder, you may be eligible to convert your existing high-interest loan into a federally-backed consolidation program with a lower rate*. Your loans may even be eligible for total loan forgiveness.

Benefits of the Consolidation Program may include:

- **No credit check**
- **Interest rate reduction regardless of balance or pay history**
- **Lower monthly payments based on income and family size**
- **Loan forgiveness**

No other calls or notices will be sent to you in regards to this offer.
**Due to a high call volume, we ask that you complete the process below prior to calling.**

Please create your Federal Student Aid ID and call **855-465-6870** by February 25th, 2019 or before your next payment is due. If unsure on how to create your Federal Student Aid ID, please see below or contact us for assistance.

### <u>CREATING YOUR FSA ID IS QUICK AND SIMPLE!</u>
Step 1 – Visit <u>https://nslds.ed.gov/nslds/nslds_SA/</u>
Step 2 – Click 'Financial Aid Review'
Step 3 – Click 'Accept'
Step 4 – Click 'Create an FSA ID'

**IMPORTANT:** This is a government website which Unified Document Services does not own. FSA ID creation is a government program which Unified Document Services did not create.

Unified Document Services
1-855-465-6870
Monday – Friday 7:00am – 6:00pm PST & Saturday 9:00am - 2:00pm PST



## CALL TOLL-FREE TODAY TO BEGIN THE PROCESS OF REDEEMING YOUR
## FEDERAL BENEFITS: 855-465-6870   REFERENCE BENEFIT ID: UD14346602

UDS is not affiliated with the government or any of its programs. We offer private, fee-based application assistance to aid consumers in applying for government offered programs. While such programs may be available for free directly by various government agencies, our services are fee-based and focus on application and document preparation. We do not charge fees for access to such programs, only to prepare and counsel application and document preparation. Services may be fulfilled by a third party processing agency.

*The Department of Education may offer an interest rate reduction with set-up of automatic payments.

000031832