Aaron D. Aftergood (239853)
    aaron@aftergoodesq.com
**THE AFTERGOOD LAW FIRM**
1880 Century Park East, Suite 200
Los Angeles, CA 90067
Telephone: (310) 550-5221
Facsimile: (310) 496-2840

Taylor T. Smith (*admitted pro hac vice*)
    tsmith@woodrowpeluso.com
**WOODROW & PELUSO, LLC**
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Attorneys for Plaintiff and the Classes

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| **Bryce Abbink,** individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>v.<br><br>**Experian Information Solutions, Inc.,** an Ohio corporation, **Lend Tech Loans, Inc.,** a California corporation, and **Unified Document Services, LLC,** a California Limited Liability Company,<br><br>                Defendants. | Case No.  8:19-cv-01257-JFW-PJW<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date: September 16, 2019<br>Time: 1:30 p.m.<br>Judge: Hon. John F. Walter<br>Courtroom: 7A<br>Complaint Filed: June 21, 2019 |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................iv

I.     Introduction .....................................................................................................1

II.    Factual & Procedural Background ...................................................................3

     A.    The FCRA allows for prescreened credit offers. ...................................3

     B.    Experian sold a report about Abbink to Lend Tech.................................4

III.    Argument .........................................................................................................6

     A.    Experian first plausibly violated the FCRA by furnishing consumer reports about Plaintiff and others based solely on Lend Tech's certification that it would use the information to extend firm offers of credit. .......................................................................................................7

          1.    Experian has liability under the FCRA for relying solely on Lend Tech's representation that it had a permissible purpose to obtain the report. ..................................................................................7

          2.    Experian also violated the FCRA by failing to implement reasonable procedures designed to ensure that it only discloses reports for permissible purposes. ................................................9

          3.    Experian also acted willfully and with reckless disregard to its statutory duty. .......................................................................13

     B.    Plaintiff's allegations that Experian disclosed his federal student loan debt also plausibly state a claim for a willful violation of Section 1681b(c)(2)...........................................................................................14

          1.    Experian violated the FCRA's bar against identifying the relationship of a consumer to a creditor or other entity. ..........15

          2.    Experian acted in reckless disregard of its duties under Section 1681b(c)(2). ............................................................................17

1

C.     To the extent the Court determines that Plaintiff failed to allege

adequate facts, the Court should grant Plaintiff leave to amend. .......19

IV.   Conclusion ...................................................................................19

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF AUTHORITIES**

*Aleksic v. Experian Information Solutions, Inc.*, No. 13 C 7802, 2014 WL 2769122
(N.D. Ill. June 18, 2014) ...................................................................10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)................................................6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2008)................................6

*Chavez v. Premier Bankcard, LLC*, No. 1:11-cv-01101 LJO GSA, 2011 WL
5417107 (E.D. Cal. Nov. 8, 2011) .......................................................4

*Cortez v. Trans Union, LLC*, 617 F.3d 688 (3d Cir. 2010) ....................................18

*Dalton v. Capital Associated Industries, Inc.*, 257 F.3d 409 (4th Cir. 2001) .........12

*Edwards v. Toys "R" Us*, 527 F.Supp.2d 1197 (C.D. Cal. 2007) ..........................14

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) ...............19

*Federal Trade Commission v. Alliance Document Preparation*, 296 F.Supp.3d 1197
(C.D. Cal. 2017) ..............................................................................16

*Feist v. Petco Animal Supplies, Inc.*, 218 F.Supp.3d 1112 (S.D. Cal. 2016) ..........18

*Harris v. Database Management & Marketing, Inc.*, 609 F.Supp.2d 509
(D. Md. 2009)................................................................................10

*Holley v. Crank*, 400 F.3d 667 (9th Cir. 2005)......................................11

*In re Edwards*, 561 B.R. 848 (D. Kan. 2016)........................................19

*In re Halling*, 449 B.R. 911 (W.D. Wis. 2011) ......................................17

*In re Trans Union Corp. Privacy Litigation*, 211 F.R.D. 328
(N.D. Ill. 2002)..........................................................................3, 15

*Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833 (5th Cir. 2004)..........4

*Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074 (9th Cir. 1990) ..........19

*Pasternak v. Trans Union LLC*, No. C 07-04980 CW, No. C 08-02972 CW, 2008
WL 11388680 (N.D. Cal. Dec. 19, 2008) ..........................................12

*Pennsylvania v. Navient Corporation*, 354 F.Supp.3d 529 (M.D. Pa. 2018)..........16

*Pintos v. Pacific Creditors Ass'n.*, 605 F.3d 665 (9th Cir. 2010) ............................8

*Robins v. Spokeo, Inc.*, 867 F.3d 1108 (2017) ...........................................................3

*Robrinzine v. Big Lots Stores, Inc.*, 156 F.Supp.3d 920 (N.D. Ill. 2016) ...............13

*Rose v. Seamless Financial Corp. Inc.*, 916 F.Supp.2d 1160 (S.D. Cal. 2013) ......11

*Safeco Ins. Co. of America v. Burr*, 551 U.S. 47 (2007) ...................................13, 17

*Singleton v. Domino's Pizza, LLC*, Civil Action No. DKC 11-1823, 2012 WL
            245965 (D. Md. Jan. 25, 2012) ...................................................13, 18

*Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017) ......................................................18

*Wilson v. Sessoms*, Civil No. 4:96CV01031, 1998 WL 35305548
            (M.D.N.C. Mar. 16, 1998) .................................................................10

## **STATUTES & AUTHORITY**

Cal. Bus. & Prof. Code § 10006 ..............................................................................11

Cal. Bus. & Prof. Code § 10130 ..............................................................................11

15 U.S.C. § 1681b, *et seq.* ............................................................................... *passim*

15 U.S.C. 1681e(a) .......................................................................................*passim*

40 Years of Experience with the Fair Credit Reporting Act ("FTC Report")..........9

## I.      Introduction

Defendant Experian Information Solutions, Inc. ("Defendant" or "Experian") sells consumer reports to Defendant Lend Tech Loans, Inc. ("Lend Tech") based on nothing more than Lend Tech's certification that it has a permissible purpose for obtaining the reports: to supposedly extend a firm offers of credit. This is a misstep—Lend Tech has no such purpose; rather, it obtains the reports from Experian simply to resell them to co-Defendant Unified Document Services, LLC ("UDS") so that UDS can market its (disturbingly) overpriced document completion services more efficiently. Indeed, in Plaintiff Bryce Abbink's ("Plaintiff" or "Abbink") case, Lend Tech ostensibly told Experian that it was going to extend him a firm offer of credit and, relying on that alone, Experian disclosed the report. Lend Tech, in turn, sold the report to UDS, who then used the information to send Abbink a highly specific advertisement for UDS's services.

For its part, Experian is liable to Abbink and others under the Fair Credit Reporting Act, 15 U.S.C. § 1681e, *et seq*., because, at the time of the disclosure, there were reasonable grounds to believe that the reports would be used impermissibly. There were a host of red-flags that would have alerted Experian had it bothered to investigate. As set forth in the Complaint, Lend Tech lacked a license to make loans or provide insurance, thus negating any chance Experian reasonably believed Lend Tech would use the reports to extend firm offers of credit or for some other permitted purpose (particularly where Lend Tech never indicated it was a reseller). Lend Tech also provided an outdated address and phone number. Viewed in a light most favorable to Plaintiff—and coupled with the fact that Experian allegedly failed to reasonably investigate—Experian plausibly failed to implement reasonable procedures designed to minimize the likelihood that it would release reports without a permissible purpose. *See* § 1681b.

Further, in disclosing to Lend Tech Plaintiff's student loan debt, Experian also violated the Act's prohibition on disclosing a consumer's relationship to another person or entity.

Experian's arguments fall apart. First, Experian claims that Plaintiff has somehow conceded that Experian "had reason to believe it was furnishing Plaintiff's consumer report in accordance with § 1681b(c)(1)" because the allegations of the Complaint "concede that Experian furnished Plaintiff's consumer report based on Lend Tech's 'representation that it intended to use the report for the purpose of a firm offer of credit.'" (Def. Mot. at 6.) This seriously mischaracterizes the Complaint and ignores Plaintiff's allegations that: (1) Experian wrongfully took Lend Tech's representation at "face value" (Compl. ¶¶ 30, 57) and (2) that Experian failed to verify the identity of Lend Tech Loans and the supposed permissible purpose for which the information was being sought (Compl.¶ 52).

Experian's assertion that any violation wasn't willful fares no better. It's failure to investigate and "set it and forget it" approach to requests for consumer reports are objectively unreasonable given the plain language of the statute.

Plaintiff's claims under § 1681b(c)(2) also survive dismissal. Despite the FCRA's bar against providing information in pre-screened offers of credit that identifies the relationship between the consumer and any particular creditor or other entity, Experian plainly discloses the amount of federal student loan debt to those who request it. Of course, Experian could've disclosed Plaintiff's *total* student loan debt, which, by including the potential for private loans, would've prevented Lend Tech or UDS from learning the value of the Plaintiff's federal loans.

In short, the Complaint contains sufficient facts that, if proven true, would plausibly entitle Plaintiff to relief under the FCRA. As such, and notwithstanding its

1    strident arguments to the contrary, Experian's Motion to Dismiss should be denied.

2    **II.      Factual & Procedural Background**

3          **A.      The FCRA allows for prescreened credit offers.**

4          Briefly, the FCRA was enacted "'to ensure fair and accurate credit reporting'"

5    and to 'protect consumer privacy.'" *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1113

6    (2017) (citation omitted). The Act was "designed to 'ensure that consumer reporting

7    agencies exercise their grave responsibilities with fairness, impartiality, and a

8    respect for the consumer's right to privacy.'" *In re Trans Union Corp. Privacy*

9    *Litigation*, 211 F.R.D. 328, 335 (N.D. Ill. 2002). To safeguard private consumer

10   information, the Act limits the circumstances in which a CRA may furnish a

11   consumer report. *See* 15 U.S.C. § 1681b(a), *et seq.* These circumstances are

12   commonly referred to as "permissible purposes." The Act prohibits the furnishing

13   consumer reports to any Person unless a CRA has a reason to believe its customer

14   intends to use the reports for a permissible purpose. 15 U.S.C. §§ 1681b(a)(3).

15        Before to furnishing consumer reports, the Act requires CRAs to establish

16   and "maintain reasonable procedures designed to . . . limit the furnishing of

17   consumer reports to the purposes listed under section 1681b." 15 U.S.C. 1681e(a).

18   Prospective users must "identify themselves, certify the purposes for which the

19   information is sought, and certify that the information will be used for no other

20   purpose." *Id.* A CRA must "make a reasonable effort to verify the identity of a new

21   prospective user and the uses certified by such prospective user prior to furnishing

22   such user a consumer report." *Id.* Further, and critically here, a CRA may not

23   "furnish a consumer report to any person if it has reasonable grounds for believing

24   that the consumer report will not be used for a purpose listed in section 1681b." *Id.*

25   (emphasis added).

26        One permissible purpose allows "creditors to purchase prescreened lists of

27

28

consumers who meet the creditor's specific criteria without the consumers' consent as long as the purchaser intends to give the consumer a 'firm offer of credit.'" *See Chavez v. Premier Bankcard, LLC*, No. 1:11-cv-01101 LJO GSA, 2011 WL 5417107, at *3 (E.D. Cal. Nov. 8, 2011). As Experian acknowledges, this process is known as "prescreening." "Creditors interested in extending firm offers of credit provide the credit reporting agency with their credit specifications and the agency generates a list of consumers who meet that criteria based on information contained in their credit reports." *Id.*

The Act limits what information can be provided in the context of a prescreened list, however. *See* 1681b(c)(2), *et seq.*; *see also Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 840 (5th Cir. 2004) ("Consumer reporting agencies, however, are only permitted to furnish limited information for a credit transaction not initiated by the consumer."). That information includes only: "(A) the name and address of a consumer; (B) an identifier that is not unique to the consumer and that is used by the person solely for the purpose of verifying the identity of the consumer; and (C) other information pertaining to a consumer that does not identify the relationship or experience of the consumer with respect to a particular creditor or other entity." 15 U.S.C. § 1681b(c)(2). "To access more detailed information to determine whether the consumer meets a creditor's specific criteria bearing on credit worthiness, a creditor must obtain a consumer's authorization." *Kennedy*, 369 F.3d at 841.

**B. Experian sold a report about Abbink to Lend Tech.**

This case involves Experian's sale of Plaintiff's consumer report to Lend Tech absent any permissible purpose. (Compl. ¶ 2.) Experian is obviously a major consumer reporting agency. (Compl. ¶ 5.) Experian aggregates the data of millions of consumers worldwide and then sells that information to banks, credit card

companies, and various other companies that have a permissible purpose. (*Id.* ¶ 5.)

Lend Tech is a California corporation that claims to engage in the business of mortgage lending. (Compl. ¶ 24.) Lend Tech does not possess any license, however, to engage in mortgage lending in the State of California. (*Id.* ¶ 24.) In fact, Lend Tech does not offer consumers any form of credit or insurance at all. (*Id.* ¶ 28.) Regardless, in or around January 2019, Lend Tech submitted a request to Experian to obtain information contained in Plaintiff's consumer report. (*Id.* ¶ 26.) Lend Tech requested Plaintiff's consumer report for the stated purpose of making a firm offer of credit. (*Id.* ¶ 48.) In making the request, Lend Tech provided inaccurate information, including a nonworking telephone number and a business address that does not match the current address on its California business filing. (*Id.* ¶ 55.)

Rather than deny the request, on January 21, 2019, Experian sold Plaintiff's consumer report to Lend Tech. (Compl. ¶ 27.) In doing so, Experian demonstrated a failure to implement reasonable procedures to prevent the furnishing of consumer reports for impermissible purposes. (*Id.* ¶ 29.) Specifically, Experian failed to make a reasonable effort to verify the identity of Lend Tech and the purpose that Lend Tech claimed to obtain Plaintiff's consumer report. (*Id.* ¶ 29.) Instead, Experian just accepted Lend Tech's blanket assertion that it had a permissible purpose for obtaining the consumer reports at face value and sold Plaintiff's consumer report absent any adequate investigation. (*Id.* ¶¶ 7, 29.) Additionally, Experian accepted Lend Tech's purported address and telephone number (both of which are incorrect) and published both pieces of information on Plaintiff's consumer report. (*Id.* ¶ 55.)

In furnishing the reports, Experian also disclosed the total sum of outstanding federal student loan debt held by Plaintiff and all of the alleged class members. (Compl. ¶ 65.) The sum of federal student loan debt directly identifies the relationship between Plaintiff and the U.S. Department of Education ("Dept. of

Education"). (*Id.* ¶ 66.) Experian repeated this process and furnished Lend Tech with consumers' student loan information on multiple occasions. (*Id.* ¶ 58.)

Shortly thereafter, Lend Tech sold information contained in Plaintiff's consumer report to UDS. (Compl. ¶ 31.) UDS utilized this information to target, via mailings, Plaintiff and the alleged class members for the purpose of soliciting them to purchase its "fee-based application assistance" service. (*Id.* ¶ 32.) That is, for a substantial fee, UDS offers to complete documents on behalf of consumers to consolidate their federal student loans—paperwork that can be easily completed for free via the Dept. of Education. (*Id.* ¶ 32.) UDS does not offer consumers any form of credit at all. (*Id.* ¶ 88.) The Dept. of Education even warns consumers not to fall prey the deceptive practices of companies like UDS. (*Id.* ¶¶ 32, 89.) Regardless, UDS utilized Plaintiff's personal information that it obtained from Experian (via Lend Tech) to target him. (Compl., Ex. A.) The mailer prominently featured Plaintiff's total federal student loan debt, statements indicating that he may be eligible for consolidation of his federal student loans, and various other misleading statements. (*Id.*)

Based on these facts, Experian's attempt to exit this case on the pleadings fails, and the Court should deny its Motion to Dismiss.

## III.  Argument

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" but requires "more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2008) (citations omitted).

As set forth below, Plaintiff has stated plausible claims under the FCRA, and Experian's Motion to Dismiss should be denied.

**A.    Experian first plausibly violated the FCRA by furnishing consumer reports about Plaintiff and others based solely on Lend Tech's certification that it would use the information to extend firm offers of credit.**

Experian launches three main attacks on count one. First, Experian contends that it did not violation Section 1681b because it relied on Lend Tech's representation that the information would be used to extend firm offers of credit. (Def. Mot. at 5-7.) Second, Experian claims that Plaintiff hasn't alleged that Experian failed to maintain reasonable procedures under Section 1681e(a). (Def. Mot. at 7-9.) And third, Experian claims that even if it violated the FCRA, the allegations don't rise to the level of a willful violation.

Fortunately for the Plaintiff and other consumers who had their personal information wrongfully disclosed, the FCRA is not so toothless. Rather, and as explained below, Experian is plausibly liable because reasonable grounds existed to suggest the reports would be used impermissibly and because Experian failed to implement reasonable procedures.

**1.    Experian has liability under the FCRA for relying solely on Lend Tech's representation that it had a permissible purpose to obtain the report.**

Experian's central attack on Count I is that it, Experian, had "reason to believe" that Lend Tech possessed a permissible purpose based solely on Lend Tech's certification (Def. Mot. at 6-7). This argument fails. Experian ignores on

point Ninth Circuit precedent and misunderstands the factual allegations of the Complaint.

In reality, Experian cannot rely on Lend Tech's blanket certification that the reports would be used to extend firm offers of credit. Indeed, the Ninth Circuit has explained that "Section 1681e requires more from a credit reporting agency than merely obtaining a subscriber's general promise to obey the law." *Pintos v. Pacific Creditors Ass'n.*, 605 F.3d 665, 677 (9th Cir. 2010). After obtaining a customer's certification of a permissible purpose, "the reporting agency must make 'a reasonable effort' to verify the certifications and may not furnish reports if 'reasonable grounds' exist to believe that reports will be used impermissibly." *Id.* (citing 15 U.S.C. § 1681e(a)). Under Section 1681e(a), "a subscriber's certification *cannot* absolve the reporting agency of its independent obligation to verify the certification and determine that no reasonable grounds exist for suspecting impermissible use." *Id.* (emphasis added).

In light of this authority, Experian cannot rely solely on Lend Tech's representation that it would use the reports for the permissible purpose of making firm offers of credit. As set forth in the Complaint, Experian was required to do more, including verifying Lend Tech's identity and purpose, to determine whether 'reasonable grounds' existed to believe the reports would be used improperly. (Compl. ¶ 46.) Because Experian wasn't allowed to simply accept Lend Tech's certification at face value, Plaintiff's acknowledgement that Experian relied on Lend Tech's representation does nothing to obviate Experian's duty to independently investigate. Put simply, Experian's suggestion that Plaintiff has somehow conceded that Experian had a reasonable basis to believe the report would be used for a permissible purpose because Plaintiff admits that Experian "furnished Plaintiff's consumer report based on Lend Tech's 'representation that it intended to

use the report for the purpose of a firm offer of credit'" (Def. Mot. at 6) goes nowhere. Yes, Lend Tech provided a permissible purpose; no, Experian wasn't allowed to rely solely on that representation to formulate a reasonable belief as to whether the reports would be used only for permissible purposes. For that Experian was required to implement reasonable procedures that included performing a reasonable investigation into Lend Tech's identity and stated purpose.

> **2.**     **Experian also violated the FCRA by failing to implement reasonable procedures designed to ensure that it only discloses reports for permissible purposes.**

As indicated above, under Section 1681e(a), "a subscriber's certification *cannot* absolve the reporting agency of its independent obligation to verify the certification and determine that no reasonable grounds exist for suspecting impermissible use." *Id.* (emphasis added). In 2011, the Federal Trade Commission ("FTC") issued a staff report, to assist businesses with FCRA compliance. *See* 40 Years of Experience with the Fair Credit Reporting Act.[1] The report recognizes that adequate verification procedures require more than simply taking the requestor's word for it:

> Appropriate procedures might require an on-site visit to the *user's place of business*, a check of the user's references, *confirmation of the business identity of the applicant* (e.g., via phone directories or publicly available data such as governmental licensing information), and examining applications and supporting documentation supplied by applicants, or other reasonable methods, to detect suspect representations, discrepancies, illogical information, suspicious

---

[1] https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf

patterns, factual anomalies, and other indicia of unreliability.

*See* FTC Report at pg. 65 (emphasis added).[2] Other facts may bear on reliability as well: for example, a business that lacks a proper license to engage in its purposed business should prompt a CRA to conduct further investigation. *See Aleksic v. Experian Information Solutions, Inc.*, No. 13 C 7802, 2014 WL 2769122, at *2 (N.D. Ill. June 18, 2014) ("[P]laintiffs now allege that Clarity knew the lenders were unlicensed and under investigation, which if true, required Clarity to take additional steps to determine whether the lenders would use the data for permissible purposes."). Likewise, where a business that requests reports for a purpose in line with its actual business purpose is suggestive of a permissible purpose, *see Wilson v. Sessoms*, Civil No. 4:96CV01031, 1998 WL 35305548, at *4 (M.D.N.C. Mar. 16, 1998) (finding a reason to believe a permissible purpose existed because "Street & Co.'s primary business was skip-tracing, which is generally a permissible purpose under the FCRA."); *see also Harris v. Database Management & Marketing, Inc.*, 609 F.Supp.2d 509, 515 (D. Md. 2009) (reasonable belief where Defendant engaged in a business that is a permissible purpose), the opposite is true where the requestor doesn't engage in such commerce.

In this case, the allegations show that Experian's procedures are plausibly unreasonable. Abbink specifically alleges that Experian performed no adequate investigation and that it simply accepted Lend Tech's certification at face value. (Compl. 29, 30.) Further, Lend Tech lacks a license to conduct mortgage lending (its claimed business purpose) in the State of California. Indeed, Lend Tech doesn't offer consumers any form of credit or insurance at all. (Compl. ¶ 28.) Experian also accepted Lend Tech's incorrect address (which was more than a year old) and a

---

[2] https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf

nonworking telephone number, and printed both pieces of information on Plaintiff's consumer report on January 21, 2019.[3] In sum, Plaintiff's allegations regarding Experian's failure to verify Lend Tech's identity and purported purpose demonstrates a plausible failure to maintain reasonable procedures.

Experian claims that Lend Tech's lack of proper license is "no red flag at all" because "it is Lend Tech's designated broker who would have been listed under the NMLS and California license system, not Lend Tech." (Def. Mot. at 8.) Experian confuses the burden for compliance with the requirement to obtain a license. *See Holley v. Crank*, 400 F.3d 667, 672 (9th Cir. 2005) (emphasis added) ("The designated officer/broker, not the corporate entity itself, is charged with the responsibility to *assure corporate compliance with the real estate law*."). While it is true that in California the burden of *corporate compliance* is placed on the designated broker and not the corporation, a corporate license isn't simply optional. Rather, in the State of California, "[i]t is unlawful for any person to engage in the business, act in the capacity of, advertise or assume to act as a real estate broker or a real estate salesman within the state without first obtaining a real estate license from the department." Cal. Bus. & Prof. Code § 10130. Notably, the term "person" "includes corporation, company and firm." Cal. Bus. & Prof. Code § 10006. Hence, "[i]n California *both corporations and individuals* are required to be licensed to operate as real estate brokers." *Rose v. Seamless Financial Corp. Inc.*, 916 F.Supp.2d 1160, 1166 (S.D. Cal. 2013) (emphasis added). Had Lend Tech gone beyond the four corners of Lend Tech's certification and performed any reasonable investigation, it would have readily discovered such facts. That it failed to do so in

---

[3] It should be pointed out that the only information a consumer will ever get to identify the entities that access their reports are: (1) the entities name, (2) the address, and (3) a telephone number. Here, Experian included false information for two of the three.

the face of such red flags permits the reasonable inference that Experian plausibly failed to implement reasonable procedures designed to ensure that reports are only disclosed for permissible purposes.

Experian also argues that Plaintiff doesn't allege that it, Experian, failed initially to verify Lend Tech's information and that consumer reporting agencies aren't required to verify every request. (Def. Mot. at 9.) However, it would undermine the purpose of Section 1681e, for Experian to merely have to verify the identity of Lend Tech's once and have no follow-up verification for the contact information, which, again, is the only information a consumer will ever get to see. Here, Lend Tech's address was over a year old and the telephone number was not working at the time the information was published to Plaintiff's consumer report. Moreover, had Experian bothered to check, it would have been aware of such deficiencies, which would warrant additional investigation. In short, this too is problematic and further underscores the failure of Experian to implement adequate procedures.

Ultimately, "[t]he reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of cases." *Pasternak v. Trans Union LLC*, No. C 07-04980 CW, No. C 08-02972 CW, 2008 WL 11388680, at *7 (N.D. Cal. Dec. 19, 2008) (citing *Guimond v. Trans Union Credit Information Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995)); *see also Dalton v. Capital Associated Industries, Inc.*, 257 F.3d 409, 416 (4th Cir. 2001) (citations omitted) ("The issue of whether the agency failed to follow "reasonable procedures" will be a "jury question[ ] in the overwhelming majority of cases.").

As such, because the allegations demonstrate a plausible claim that Experian failed to maintain reasonable procedures and lacked a reasonable belief for providing Plaintiff's consumer report to Lend Tech, the Court should deny

Experian's motion to dismiss.

### 3. Experian also acted willfully and with reckless disregard to its statutory duty.

Experian next asserts that even if Plaintiff has alleged a violation of the Act, no willfulness has been plead because the Complaint doesn't include "factual allegations concerning Experian's state of mind or its knowledge that Lend Tech was not using the prescreen reports for their intended purpose." (Def. Mot. at 10-11.)

Experian's argument ignores the allegations of the Complaint. A "reckless disregard of a requirement of FCRA would qualify as a willful violation." *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 71 (2007). As Defendant concedes, a company acts in reckless disregard if it takes an action or interprets a statute in a manner that is both "objectively unreasonable" and "ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id*. at 69. At the motion to dismiss stage, "courts have found assertions that a defendant repeatedly violated the FCRA sufficient to allege reckless—and, therefore, willful—misconduct." *Singleton v. Domino's Pizza, LLC*, Civil Action No. DKC 11-1823, 2012 WL 245965, at *4 (D. Md. Jan. 25, 2012) (collecting cases). Additionally, allegations that a defendant was aware of the FCRA's requirements but failed to comply with the requirements were also sufficient to state a claim. *See id.* ("[A]ssertions that a defendant was aware of the FCRA, but failed to comply with its requirements, are sufficient to support an allegation of willfulness and to avoid dismissal."); *see also Robinzine v. Big Lots Stores, Inc.*, 156 F.Supp.3d 920, 929-30 (N.D. Ill. 2016) ("[T]he Complaint illustrates that Big Lots was aware of the requirement and did not adhere to it. Thus, the Complaint adequately alleges that Big Lots's violation was willful.").

Abbink sufficiently alleges a plausible claim that Experian willfully violated the FCRA by taking Lend Tech's verification at face value. Experian is a large corporation that regularly engaged counsel in matters such as FCRA compliance. (Compl. ¶ 59) and failing to go beyond Lend Tech's verification was objectively unreasonable. A substantial portion of Experian's income comes from selling the consumers data to its clients. (*Id.* ¶ 5.) As one of the largest CRAs, Experian cannot dispute that it was aware of its duties under the FCRA and that it acted in reckless disregard of them when it took Lend Tech's representation at face value. (*Id.* ¶¶ 5, 59.) Indeed, as explained above Plaintiff has alleged that Experian's conduct violated Sections 1681b and 1681e by furnishing consumer reports to Lend Tech on a repeated basis. (*Id.* ¶¶ 7-9, 29, 58.) Experian's repeated violations have a widespread, pervasive impact on consumers' privacy. (*Id.* ¶ 59.) In short, by providing consumer reports to Lend Tech absent any permissible purpose and by failing to implement reasonable procedures, Experian acted in reckless disregard of its FCRA duties.

In setting out this argument, Experian ignores that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Further, and as with the other issues presented by this claim, "[w]illfulness under the FCRA is generally a question of fact for the jury." *Edwards v. Toys "R" Us*, 527 F.Supp.2d 1197, 1210 (C.D. Cal. 2007). As such, willfulness shouldn't be decided on the pleadings; rather, Plaintiff's allegations state a plausible claim that Experian willfully violated the FCRA and discovery should be exchanged on this issue.

**B.    Plaintiff's allegations that Experian disclosed his federal student loan debt also plausibly state a claim for a willful violation of Section 1681b(c)(2).**

1       With respect to Abbink's second claim, Experian argues that its disclosure of

2   Plaintiff's total federal student loan debt complied with Section 1681b(c)(2)

3   because he does not have a "direct credit relationship" with the Department of

4   Education. (Def. Mot. at 12.) In Experian's view, Plaintiff needs to allege that

5   Experian disclosed his relationship with a specific loan servicer. (Def. Mot. at 12-

6   13.) Alternatively, Experian claims that any violation of § 1681b(c)(2) wasn't

7   willful. (Def. Mot. at 13.) Both of these arguments fail.

8                    **1.      Experian violated the FCRA's bar against identifying the**

9                    **relationship of a consumer to a creditor or other entity.**

10      Experian speculates that disclosing Plaintiff's total outstanding federal

11  student loan debt—which is guaranteed by the Dept. of Education—does not

12  identify his relationship with respect to a particular creditor or other entity because

13  "a consumer does not have a direct credit relationship with the [Dept. of

14  Education]." (Def. Mot. 12.) Experian asserts that to violate the FCRA the

15  disclosure would have needed to have identified Plaintiff's specific servicer of his

16  federal student loans. (Def. Mot. at 12-13.)

17      Section 1681b(c)(2) does not delineate between different types of

18  relationships, however. See *In re Trans Union Corp. Privacy Litigation*, 211 F.R.D.

19  328, 336 (N.D. Ill. 2002) (this provision "limits the information that a consumer

20  reporting agency may disclose" about consumers). Rather, Section 1681b(c)(2)

21  limits what information can be provided in the context of prescreened offers of

22  credit. That information includes only: "(A) the name and address of a consumer;

23  (B) an identifier that is not unique to the consumer and that is used by the person

24  solely for the purpose of verifying the identity of the consumer; and (C) *other*

25  *information pertaining to a consumer that does not identify the relationship or*

26  *experience of the consumer with respect to a particular creditor or other entity*." 15

27

28

1    U.S.C. § 1681b(c)(2) (emphasis added).

2         Borrowers with federal student loan debt certainly have a relationship with

3    the Dept. of Education. For one, the "Department of Education is the exclusive

4    administrator of repayment and debt relief plans available to federal student loan

5    borrowers." *Federal Trade Commission v. Alliance Document Preparation*, 296

6    F.Supp.3d 1197, 1204 (C.D. Cal. 2017). While it is true, as Experian states, that

7    loan servicers handle billing and other services associated with repayment, the

8    servicers are limited to approving borrowers with eligibility and enrollment in

9    repayment and debt relief plans that are created by Dept. of Education. *See id.*

10   ("loan servicers approved by the Department of Education are permitted to

11   determine eligibility or approve borrowers for enrollment in payment plans or other

12   federal student loan programs."). Furthermore, the Dept. of Education ultimately

13   guarantees all federal student loans. *See Pennsylvania v. Navient Corporation*, 354

14   F.Supp.3d 529, 535 (M.D. Pa. 2018) ("Unlike federal student loans, private student

15   loans are not guaranteed by the government and are issued 'based on the lender's

16   assessment of the borrower's creditworthiness/likelihood of repaying the loan.'").

17        Experian's disclosure of Plaintiff's total federal student loans debt identifies

18   his "relationship or experience" with respect to the Dept. of Education. Based upon

19   Experian's disclosure, Lend Tech now has knowledge of: (1) who ultimately

20   guarantees Plaintiff's debt (the Dept. of Education); (2) that Plaintiff must repay his

21   student loans based upon the repayment plans that the Dept. of Education offers to

22   borrowers; and (3) the potential debt relief plans that are available to Plaintiff. This

23   is far more information than Congress intended a creditor to be able to obtain for

24   the purposes of extending a prescreened offer of credit. And predictably, as a result

25   of Experian's over-disclosure, Plaintiff was targeted by UDS using this exact

26   information. Accordingly, Experian's disclosure of Plaintiff's federal student loan

27

28

debt identified his relationship and experience to the Dept. of Education in violation of Section 1681b(c)(2).

Experian's suggestion that it would have had to disclose a "direct credit relationship" to violate the provision, including a "particular servicer of his student loans," reads into the FCRA a requirement that simply doesn't exist. (Def. Mot. at 13.) Nothing in Section 1681b(c)(2) can be construed as requiring the disclosure to identify a direct creditor. Nor does it require the disclosure to be a creditor at all. The Act broadly limits the disclosure of any information that identifies the relationship or experience to a particular creditor "*or other entity*." *See* 15 U.S.C. § 1681b(c)(2) (Emphasis added). And in any case, the Dept. of Education could be considered a creditor. *See In re Halling*, 449 B.R. 911, 914-15 (W.D. Wis. 2011) ("guarantors are normally "creditors" within the meaning of the bankruptcy code.") Experian's "direct credit relationship" argument goes nowhere, and this Court should deny its Motion to Dismiss on such grounds.

In sum, the Court should find that the allegations state a plausible claim for a violation of Section 1681b(c)(2).

## 2. Experian acted in reckless disregard of its duties under Section 1681b(c)(2).

Experian also argues here that even if it did violate Section 1681b(c)(2), it did not do so willfully because its reading of the statute was not objectively unreasonable. (Def. Mot. at 13.) Experian relies exclusively on the absence of case law and regulatory guidance (*id.* at 13-14) ignoring the plain language of the statute.

Again, a defendant that acts with reckless disregard for its statutory obligations under the FCRA qualifies as a willful violation. *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 71 (2007). A reckless disregard occurs when a company takes a reading of the Act that is both unreasonable and "ran a risk of

violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69. Critically, "[a] lack of 'guidance,' . . . does not itself render [defendant's] interpretation reasonable." *Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017). Indeed, a "credit agency whose conduct is first examined under that section of the Act should not receive a pass because the issue has never been decided." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 722 (3d Cir. 2010). At the motion to dismiss stage, "assertions that a defendant was aware of the FCRA, but failed to comply with its requirements, are sufficient to support an allegation of willfulness and to avoid dismissal." *Singleton*, Civil Action No. DKC 11-1823, 2012 WL 245965, at *4 (D. Md. Jan. 25, 2012) (collecting cases). And again, "[w]hether Defendant's conduct was actually willful is a question better left to a motion for summary judgment, where the record will be more fully developed." *Feist v. Petco Animal Supplies, Inc.*, 218 F.Supp.3d 1112, 1115 (S.D. Cal. 2016).

Plaintiff sufficiently alleges a willful violation of Section 1681b(c)(2) based on Experian's disclosure of his federal student loan debt. Section 1681b(c)(2) of the FCRA is clear on its face and not open multiple interpretations. The disclosure of federal student loan debt runs afoul of Section 1681b(c)(2), and Experian is large enough that it should have known that its interpretation of the FCRA ran a substantial risk of noncompliance. (Compl. ¶¶ 5, 68.) Further, by repeatedly furnishing consumers' total federal student loan debts to Lend Tech, Experian's actions had a wide spread impact. Accordingly, the allegations sufficiently set forth a willful violation of Section 1681b(c)(2).

Defendant's counter argument that Plaintiff's reading of the statute would eviscerate prescreens in the context of student loans (Def. Mot. at 14) borders on the specious. Experian ignores the existence of private student loans, which are funded by banks and not the government. *See In re Edwards*, 561 B.R. 848, n.9 (D.

Kan. 2016) (quotations omitted) ("Private student loans are funded by banks, not the government, and banks are not required to offer the same alternatives to struggling borrowers as federal loan servicers."). Had Experian disclosed consumers total student loan debt—regardless of whether or not it was federally held or privately held—it would have easily avoided identifying the relationship of a consumer to a creditor or other entity. Indeed, lenders would still be able to offer consumers the opportunity to consolidate their student loans while not knowing whether private entities or the federal government holds the debt.

Because Plaintiff sufficiently pleads a willful violation of the FCRA's provision limiting the disclosure of prescreened credit information, the Court should deny Experian's Motion to Dismiss.

**C.      To the extent the Court determines that Plaintiff failed to allege adequate facts, the Court should grant Plaintiff leave to amend.**

"[L]eave to amend "shall be freely given when justice so requires," Fed.R.Civ.P. 15(a), and this policy is to be applied with extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1-52 (9th Cir. 2003). To the extent the Court determines that Plaintiff's allegations fail to state a claim, Plaintiff respectfully requests leave to amend to cure any defects.

**V.      Conclusion**

Experian's motion to dismiss should be denied. Plaintiff's allegations that Experian failed to implement reasonable procedures and unlawfully sold Plaintiff's consumer report to Lend Tech sufficiently states a plausible claim for a willful violation of the FCRA. Likewise, the allegations regarding Experian's disclosure of

Plaintiff's federal student loan debt states a claim for a violation of the FCRA's prohibition against disclosing a consumer's relationship and experience with a particular creditor or other entity. In summary, the key question is whether Plaintiff has alleged sufficient facts to plausibly suggest there were reasonable grounds for Experian to think there wasn't a permissible purpose. Plaintiff has done so here. For these reasons, the Court should deny Experian's motion to dismiss.

Respectfully submitted,

Dated: August 26, 2019

**Bryce Abbink**, individually and on behalf of all others similarly situated,

By:     /s/ *Taylor T. Smith*
One of Plaintiff's Attorneys

Aaron D. Aftergood (239853)
aaron@aftergoodesq.com
**THE AFTERGOOD LAW FIRM**
1880 Century Park East, Suite 200
Los Angeles, CA 90067
Telephone: (310) 550-5221
Facsimile: (310) 496-2840

Taylor T. Smith (*admitted pro hac vice*)
tsmith@woodrowpeluso.com
**WOODROW & PELUSO, LLC**
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Attorneys for Plaintiff and the Classes

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above titled document was served upon counsel of record by filing such papers via the Court's ECF system on August 26, 2019.

/s/ *Taylor T. Smith*