Richard J. Grabowski (State Bar No. 125666)
Ryan D. Ball (State Bar No. 321772)
Jack Williams IV (State Bar No. 309154)
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, California 92612
Tel: 949.851.3939
Fax: 949.553.7539
Email: rgrabowski@jonesday.com
Email: rball@jonesday.com
Email: jackwilliams@jonesday.com

Attorneys for Defendant
EXPERIAN INFORMATION
SOLUTIONS, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYCE ABBINK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., *et al.*<br><br>Defendants. | Case No. 8:19-cv-01257-JFW-PJWx<br><br>Hon. John F. Walter<br><br>**DEFENDANT EXPERIAN INFORMATION SOLUTION INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>Date:          September 16, 2019<br>Time:          1:30 p.m.<br>Location: 7A<br><br>Complaint Filed: June 21, 2019 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................... 1

ARGUMENT ........................................................................................................... 2

    I.     COUNT I FAILS TO STATE A CLAIM ...................................... 2

         A.  Experian Did Not Violate § 1681(b)(c)(1) ......................................... 2

         B.  Experian Did Not Violate § 1681e(a) ................................................ 5

         C.  Plaintiff Has Failed To Allege A Willful Violation ......................... 7

    II.    COUNT II FAILS TO STATE A CLAIM ..................................... 9

         A.  Experian Did Not Violate § 1681(b)(c)(2) ......................................... 9

         B.  Plaintiff Has Failed To Allege A Willful Violation ....................... 10

    III.   LEAVE TO AMEND SHOULD NOT BE GRANTED ....................... 11

CONCLUSION ....................................................................................................... 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<small>ASES</small>

*Albrecht v. Lund,*
   845 F.2d 193 (9th Cir. 1988) ................................................................. 12

*Aleksic v. Experian Info. Sols., Inc.,*
   No. 13-cv-7802, 2014 WL 2769122 (N.D. Ill. June 18, 2014) .......................... 5, 6

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ....................................................................... 7, 9

*Baker v. Trans Union LLC,*
   No. 07-cv-8032, 2008 WL 4838714 (D. Ariz. Nov. 6, 2008)................................ 4

*Banga v. Experian Info. Sols., Inc.,*
   No. 09-cv-04867, 2013 WL 5539690 (N.D. Cal. Sept. 30, 2013) ..................... 11

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ....................................................................... 7, 9

*Bock v. Cal. Capital Loans, Inc.,*
   216 Cal. App. 4th 264 (2013) ............................................................... 6

*Boothe v. TRW Credit Data,*
   557 F. Supp. 66, 71 (S.D.N.Y. 1982) ....................................................... 7

*Braun v. Client Servs., Inc.,*
   14 F. Supp. 3d 391 (S.D.N.Y.) ......................................................... 8, 11

*DeSoto v. Yellow Freight Sys. Inc.,*
   957 F.2d 655 (9th Cir. 1992) .............................................................. 12

*Figg v. City of Fontana,*
   No. 09-cv-01254, 2009 WL 10674420 (C.D. Cal. Nov. 9, 2009)......................... 5

*Frenzel v. AliphCom*,
    76 F. Supp. 3d 999 (N.D. Cal. 2014) ................................................................. 5

*Harris v. Database Mgmt. & Mktg., Inc.*,
    609 F. Supp. 2d 509 (D. Md. 2009) .................................................................. 4

*Guimond v. Trans Union Credit Info. Co.*,
    45 F.3d 1329 (9th Cir. 1995) ............................................................................ 8

*Henderson v. Corelogic Nat'l Background Data, LLC*,
    161 F. Supp. 3d 389 (E.D. Va. 2016) ........................................................ 3, 4

*Kennedy v. Chase Manhattan Bank USA, NA*,
    369 F.3d 833 (5th Cir. 2004) ............................................................................ 2

*Levine v. World Fin. Network Nat'l Bank*,
    554 F.3d 1314 (11th Cir. 2009) ...................................................................... 10

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000) .................................................................. 11, 12

*McDonald v. Nelnet, Inc.*,
    477 F. Supp. 2d 1010 (E.D. Mo. 2007) ......................................................... 11

*Mnatsakanyan v. Goldsmith & Hull APC*,
    No. 12-cv-4358, 2013 WL 10155707 (C.D. Cal. May 14, 2013) ...................... 8

*Perl v. Plains Commerce Bank*,
    No. 11-cv-7972, 2012 WL 760401 (S.D.N.Y. Mar. 8, 2012) ........................ 8, 9

*Perrill v. Equifax Info. Servs., LLC*,
    205 F. Supp. 3d 869 (W.D. Tex. 2016) ............................................................ 4

*Pietrafesa v. First Am. Real Estate Info. Servs., Inc.*,
    No. 05-cv-1450, 2007 WL 710197 (N.D.N.Y. Mar. 6, 2007) ........................... 7

*Pintos v. Pac. Creditors Ass'n*,
    605 F.3d 665 (9th Cir. 2010) ........................................................................ 3, 4

*Premium Mortg. Corp. v. Equifax Info. Servs., LLC*,
    No. 07-CV-6349, 2008 WL 4507613 (W.D.N.Y. Sept. 30, 2008) ........................ 2

*Rose v. Seamless Fin. Corp. Inc.*,
    916 F. Supp. 2d 1160, 1166 (S.D. Cal. 2013) ........................................... 6

*Safeco Ins. Co. v. Burr*,
    551 U.S. 47 (2007) ........................................................................ 10

*Saucier v. Katz,*
    533 U.S. 194, 202 (2001) ................................................................ 10

*Schwartz v. Goal Financial LLC*,
    485 F. Supp. 2d 170 (E.D. N.Y. 2007) ............................................... 11

*Sheldon v. Experian Info. Sols., Inc.*,
    No. 08-cv-5193, 2010 WL 3768362 (E.D. Pa. Sept. 28, 2010) .................... 11

*Student Loan Servicing All. v. D.C.*,
    351 F. Supp. 3d 26 (D.D.C. 2018) ..................................................... 9

*Washington v. CSC Credit Servs. Inc.*,
    199 F.3d 263 (5th Cir. 2000) ............................................................ 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

This case concerns Experian's sale of prescreen credit reports to Lend Tech, a purported mortgage broker, who certified that it intended to offer consumers firm offers of credit for mortgage refinancing.[1] Plaintiff claims that Experian willfully violated the FCRA by furnishing his consumer report to Lend Tech because it should have known that Lend Tech lacked a permissible purpose and impermissibly sold or transmitted his total federal student loan debt to UDS.  Plaintiff further claims that Experian's alleged disclosure of his total federal student loan debt violated § 1681b(c) of the FCRA because it identified his relationship to the U.S. Department of Education ("USDE"). Plaintiff is wrong on both counts.

As Experian demonstrated in its opening brief, Plaintiff fails to allege that Experian knew that Lend Tech was not issuing firm offers of credit or that it was reselling Plaintiff's (or any other consumer's) information to UDS. In response, Plaintiff concedes that it made no such allegations. Instead, he argues that Experian is one of the largest CRAs, and thus should have been aware of its obligations under the FCRA. But Plaintiff's contentions are nothing more than conclusory and generic assertions, and fail to identify any procedures Experian purportedly lacked in vetting Lend Tech. Consequently, Plaintiff cannot show that Experian acted in reckless disregard of its obligations under the FCRA.

Plaintiff's claim that Experian violated § 1681b(c) by allegedly disclosing his total federal student loan debt is equally unavailing.  As Experian explained in its opening brief, a student borrower does not have a relationship with the USDE, but instead transacts solely with their respective loan servicer. In response, Plaintiff merely claims that the statute is clear on its face, and that Experian should have known that its purported transmission of federal student loan information was unlawful. But, as Plaintiff has already conceded, there is no caselaw or regulatory

---

[1] Capitalized terms used but not defined herein shall be ascribed the same meaning as in Experian's opening brief (ECF No. 25-1).

guidance supporting his novel theory. To the contrary, courts that have addressed prescreening in the student loan context have never indicated that disclosing a borrower's total federal student loan debt would run afoul of § 1681b(c). Thus, Plaintiff cannot show that Experian willfully violated § 1681b(c), and the Court should prevent Plaintiff from contorting the FCRA to impose obligations on Experian that are not supported by existing law.

Because Plaintiff has failed to state a claim against Experian, the Court should dismiss his complaint as to Experian without leave to amend.

## ARGUMENT

### I.   Count I Fails To State A Claim

Plaintiff's first cause of action alleges that Experian willfully violated the FCRA by furnishing Plaintiff's consumer report to Lend Tech based on Lend Tech's representation that it intended to issue firm offers of credit. But, as Experian demonstrated, Plaintiff's allegations fail to state a claim for relief. Plaintiff does not (and cannot) plausibly allege that Experian: (i) lacked a reasonable belief that Lend Tach had a permissible purpose under § 1681b(c); (ii) failed to implement reasonable procedures in accordance with § 1681e(a); or (iii) acted willfully or in reckless disregard of its obligation under the FCRA. Accordingly, Plaintiff's first cause of action must be dismissed.

### A.   Experian Did Not Violate § 1681(b)(c)(1)

Section 1681b(c)(1) "permits a consumer reporting agency to furnish a creditor with a consumer report in connection with a credit transaction not initiated by the consumer if 'the transaction consists of a firm offer of credit.'" *See Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839-40 (5th Cir. 2004) (quoting 15 U.S.C. § 1681b(c)(1)). This process is commonly referred to as "prescreening." *Premium Morg. Corp. v. Equifax Info. Servs., LLC*, No. 07-CV-6349, 2008 WL 4507613, at *2 (W.D.N.Y. Sept. 30, 2008).

In his complaint, Plaintiff alleges that Experian willfully violated § 1681b(c)(1) by furnishing his consumer report to Lend Tech because "he did not have any relationship with Lend Tech Loans, has never conducted any business with Lend Tech Loans, and has never provided any authorization to Lend Tech Loans to obtain his consumer report." (*Id.* at ¶¶ 49-50.) But, as Experian explained in its opening brief, whether Plaintiff had a prior relationship with Lend Tech, or whether he authorized Lend Tech to obtain his consumer report, is irrelevant for purposes of § 1681b(c)(1). Rather, § 1681b(c)(1) permitted Experian to furnish Plaintiff's consumer report to Lend Tech, so long as Experian had reason to believe it was doing so for the purpose of allowing Lend Tech to extend a firm offer of credit. As Plaintiff's allegations concede, Experian furnished Plaintiff's consumer report based on Lend Tech's "representation that it intended to use [the] report for the purpose of a firm offer of credit." (Compl. at ¶ 48.) Thus, Experian believed it was furnishing Plaintiff's consumer report in accordance with § 1681b(c)(1)—*i.e.*, to make firm offers of credit. *See Henderson v. Corelogic Nat'l Background Data, LLC*, 161 F. Supp. 3d 389, 397 n.7 (E.D. Va. 2016) ("[T]o show that a report was 'furnished' for a permissible purpose . . . a CRA need only show that it had 'reason to believe' that the report would be used for that purpose, and obtained appropriate certifications from its customers that the report would be used only for that purpose." (collecting authority)).

In opposition, Plaintiff does not address § 1681(b)(c)(1).  Instead, he relies on *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665 (9th Cir. 2010), arguing that "Section 1681e requires more from a credit reporting agency than merely obtaining a subscriber's general promise to obey the law." (Doc. 34 at 13.) As an initial matter, although Plaintiff asserts that *Pintos* is "on point Ninth Circuit precedent" (*id.*), he conveniently fails to acknowledge that the Ninth Circuit expressly refused to "opine on the meaning or scope of . . .  1681b(c) or on the practice of obtaining information

from credit reporting agencies to permit the extension of offers to prescreened customers," *Pintos*, 605 F.3d at 676 n.2.

Moreover, "a plaintiff bringing a claim that a reporting agency violated the 'reasonable procedures' requirement of § 1681e must first show that the reporting agency released the report in violation of § 1681b." *Washington v. CSC Credit Servs. Inc.*, 199 F.3d 263, 267 (5th Cir. 2000); *see also Perrill v. Equifax Info. Servs., LLC*, 205 F. Supp. 3d 869, 878 (W.D. Tex. 2016) (finding that "because Plaintiffs did not show Equifax willfully violated § 1681b(a)(3)(A), they have also failed to plead a willful violation of § 1681e(a)"); *Baker v. Trans Union LLC*, No. 07-cv-8032, 2008 WL 4838714, at *5 (D. Ariz. Nov. 6, 2008) ("Because the Court has held Ms. Baker failed to state a claim for violation of § 1681b, she cannot prevail on a claim for failure to safeguard against § 1681b violations. The Court therefore grants Trans Union's motion to dismiss her FCRA § 1681e(a) claim."). Here, Plaintiff makes no attempt to explain how Experian violated § 1681b(c). Rather, Plaintiff relies on the purported fact that Lend Tech sold Plaintiff's information to UDS. But Plaintiff does not allege that Experian had any knowledge that Lend Tech was not issuing firm offers of credit or that it was reselling Plaintiff's information to UDS.

As Experian explained in its opening brief, Plaintiff "conflates the purpose for which a report is furnished and the purpose for which it is used." *Henderson*, 161 F. Supp. 3d at 397 n.7. Indeed, that Lend Tech may have ultimately used Plaintiff's report for an impermissible purpose does not mean that Experian violated § 1681b. *See Harris v. Data Mgmt. & Mktg., Inc.*, 609 F. Supp. 2d 509, 514 (D. Md. 2009) ("[Plaintiff] argues that [CRA] violated Section 1681b by selling information from [plaintiff's] consumer report to NameSeeker, which NameSeeker did not use for transactions involving firm offers of credit. However, NameSeeker's ultimate use of [plaintiff's] information is not determinative of [CRA's] liability under the statute."). Because Plaintiff fails to allege that Experian had any indicia that Lend Tech was not issuing firm offers of credit, he fails to plausibly allege that Experian violated

§ 1681(b)(c)(1). For this reason alone, Plaintiff's first cause of action must be dismissed.

## B. Experian Did Not Violate § 1681e(a)

Even if Plaintiff did sufficiently plead a violation § 1681(b)(c)(1), his first cause of action would still be subject to dismissal.  Section 1681e(a) mandates that CRAs implement reasonable procedures to ensure compliance with § 1681b, including procedures requiring "prospective users of the information [to] identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose." 15 U.S.C. § 1681e(a). In addition, "[e]very consumer reporting agency shall make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report." Id.

As Experian's opening brief demonstrated, Plaintiff's complaint fails to identify a single process or procedure Experian lacked, or failed to follow, in evaluating whether Lend Tech had a permissible purpose. Plaintiff's opposition attempts to cure the deficiencies in his complaint by claiming that Experian violated the procedures outlined by the Federal Trade Commission ("FTC") in its 2011 staff report. (ECF No. 34 at 14.) This is not only improper,[2] it is also futile.  Indeed, Plaintiff does not (and cannot) allege that Experian failed to follow any of the procedures enumerated by the FTC.  Moreover, unlike the authority upon which he relies, Plaintiff neither alleges that Experian *knew* that Lend Tech was not issuing firm offers of credit, nor that it *knew* that Lend Tech was impermissibly reselling Plaintiff's student loan information to UDS. *Cf. Aleksic v. Experian Info. Sols., Inc.*, No. 13-cv-7802, 2014 WL 2769122, at *2 (N.D. Ill. June 18, 2014) (finding that

---

[2] *See*, *e.g.*, *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."); *Figg v. City of Fontana*, No. 09-cv-01254-MMM, 2009 WL 10674420, at *2 n.10 (C.D. Cal. Nov. 9, 2009) ("plaintiff cannot amend her complaint by asserting new claims in opposition to a motion to dismiss").

plaintiff sufficiently stated a claim where it alleged that the CRA "knew the lenders were unlicensed and under investigation, which if true, required [it] to take additional steps to determine whether the lenders would use the data for permissible purposes"). In fact, Plaintiff's authority highlights the deficiencies of his allegations. *See id.* ("The situation is different, however, for Experian. Plaintiffs do not allege that Experian had any reason to believe that Clarity's certifications of its information requests were false or to suspect that the entities for whom Clarity obtained the information, i.e., the Internet lenders, might use it for an impermissible purpose. Absent such allegations, plaintiffs have not stated a viable FCRA claim against Experian.").

Plaintiff nevertheless claims that Experian lacked reasonable procedures because certain "red flags" existed at the time Lend Tech obtained his consumer report. Plaintiff is mistaken. First, Plaintiff is wrong that Lend Tech's lack of a lending license should have raised questions about its permissible purpose. As Experian explained, it is Lend Tech's designated broker who would have been listed under the National Multistate Licensing System ("NMLS"), as well as any lender with whom they were associated. Unable to dispute this, Plaintiff shifts his theory, contending—for the first time—that "*both corporations and individuals* are required to be licensed to operate as real estate brokers." (ECF No. 34 at 16 (quoting *Rose v. Seamless Fin. Corp. Inc.*, 916 F. Supp. 2d 1160, 1166 (S.D. Cal. 2013).) But Experian has never argued to the contrary. Indeed, a review of the California Department of Real Estate's website plainly reveals that Lend Tech obtained a corporate broker's license on August 11, 2017.[3] And, because "a real estate broker can perform services for both lenders and borrowers in connection with loans secured by liens on real property," *Bock v. Cal. Capital Loans, Inc.*, 216 Cal. App. 4th 264, 269 (2013), there was nothing suspect about Lend Tech's lack of a lending license in the NMLS.

_____

[3] http://www2.dre.ca.gov/PublicASP/pplinfo.asp?License_id=02043494

1    Second, Lend Tech's purportedly outdated address and nonworking telephone

2    "at the time the information was published to Plaintiff's consumer report" (whenever

3    that might be) does not plausibly demonstrate that Experian failed to comply with its

4    obligations under § 1681e(a).  (ECF No. 34 at 17.)  Indeed, as Experian explained in

5    its opening brief, Plaintiff does not allege when Lend Tech's address became

6    outdated or its telephone stopped working, much less that those fact existed at the

7    time Experian verified Lend Tech's identity and obtained Lend Tech's certification.

8    In opposition, Plaintiff claims that it would be unreasonable "for Experian to merely

9    have to verify the identity of Lend Tech's once and have no follow-up verification

10   for the contact information." (ECF No. 34 at 17.) But Plaintiff does not (and cannot)

11   allege that Experian communicated with Lend Tech or verified Lend Tech's

12   information only once. And, as Experian established, it is not required to verify Lend

13   Tech's permissible purpose each time it obtained prescreen credit reports. *See*

14   *Pietrafesa v. First Am. Real Estate Info. Servs., Inc.*, No. 05-cv-1450, 2007 WL

15   710197, at *4 (N.D.N.Y. Mar. 6, 2007) ("It would be unreasonable to require credit

16   reporting agencies processing a high number of requests to independently investigate

17   each and every request to determine its legitimacy." (citing *Boothe v. TRW Credit*

18   *Data*, 557 F. Supp. 66, 71 (S.D.N.Y. 1982)).

19   In a last ditch effort to save his claim, Plaintiff resorts to arguing that the

20   reasonableness of Experian's procedures is a question of fact.  (ECF No. 34 at 17.)

21   But Plaintiff must allege sufficient facts "to 'state a claim to relief that is plausible

22   on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp.*

23   *v. Twombly*, 550 U.S. 544, 547 (2007)).  Because he has failed to do so here, his

24   claim must be dismissed.

25   **C.   Plaintiff Has Failed To Allege A Willful Violation**

26   Even if the Court finds that Plaintiff has sufficiently alleged a violation of

27   either § 1681b(c)(1) or § 1681e(a), Plaintiff still fails to demonstrate that Experian

28   acted willfully. As Experian established in its opening brief, Plaintiff's complaint is

devoid of any factual allegations concerning Experian's state of mind or its knowledge that Lend Tech was not using the prescreen reports for their intended purpose. Indeed, there is not a single allegation that Experian had any knowledge that Lend Tech was not sending firm offers of credit or that it was reselling consumers' information to UDS.

Plaintiff attempts to sidestep these deficiencies by claiming that "Experian is a large corporation that regularly engaged counsel"; that "Experian's income comes from selling the consumers data to its clients"; and that Experian is "one of the largest CRAs" who was "aware of its duties under the FCRA." (ECF No. 34 at 19; *see also* Compl. at ¶ 59.) Accepting Plaintiff's contentions would effectively transform every FCRA violation committed by Experian into a willful one, impermissibly imposing strict liability. *See Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) ("The FCRA does not impose strict liability."). In any event, Plaintiff's generic and conclusory statements are not sufficient to state a willfulness claim under § 1681n. *See Braun v. Client Servs., Inc.*, 14 F. Supp. 3d 391, 398 (S.D.N.Y.) (dismissing plaintiff's willfulness claim because it was pleaded "in conclusory fashion, and amount[ed] to nothing more than a formulaic recitation of the elements of a cause of action . . . . Defendant's conduct could just as likely have been unintentional."); *Mnatsakanyan v. Goldsmith & Hull APC*, No. 12-cv-4358-MMM-PLA, 2013 WL 10155707, at *7 (C.D. Cal. May 14, 2013) (dismissing plaintiff's willfulness claim because the complaint did "not allege that [defendant] knew it lacked a permissible reason for making a credit inquiry at the time it inquired"); *see also Perl v. Plains Commerce Bank*, No. 11-cv-7972, 2012 WL 760401, at *2 (S.D.N.Y. Mar. 8, 2012) (dismissing plaintiff's willfulness claim, despite plaintiff sufficiently alleging that defendant "lacked a permissible purpose," because "plaintiff's assertion that defendant's state of mind in doing so was willful is conclusory").

1    Plaintiff's conclusory assertions that Experian repeatedly violated the FCRA
2    by furnishing prescreen reports is equally unavailing. "The plausibility standard is
3    not akin to a 'probability requirement,' but it asks for more than a sheer possibility
4    that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550
5    U.S. at 556). Because "it is just as possible, based on the factual allegations, that
6    [Experian] made an innocent mistake," *Perl*, 2012 WL 760401, at *2, Plaintiff's
7    claim that Experian willfully violated the FCRA by furnishing prescreen reports to
8    Lend Tech must be dismissed.

9    **II.   Count II Fails To State A Claim**

10   Plaintiff's second cause of action alleges that Experian willfully violated the
11   FCRA by purportedly disclosing Plaintiff's total federal student loan debt on the
12   prescreen report sold to Lend Tech. (Compl. at ¶¶ 64-68.) But, as Experian explained
13   in its opening brief, Plaintiff's second cause of action, like his first, distorts the
14   requirements of the FCRA and fails to state any claim against Experian, much less a
15   willful violation.

16   **A.   Experian Did Not Violate § 1681(b)(c)(2)**

17   Plaintiff alleges that Experian willfully violated § 1681b(c)(2) by informing
18   Lend Tech of his total outstanding federal student loan debt, which is purportedly
19   owned and guaranteed by the U.S. Department of Education (the "USDE").
20   According to Plaintiff, Experian's alleged disclosure of this information
21   impermissibly identified his relationship with the USDE because the USDE owns all
22   federal student loan debt. (Compl. at ¶¶ 65-67.) But, as Experian explained, a
23   consumer does not have a direct relationship with the USDE. Rather, the servicer of
24   a loan is the entity with whom a borrower has a relationship, and who administers
25   the loan. *See Student Loan Servicing All. v. D.C.*, 351 F. Supp. 3d 26, 39 (D.D.C.
26   2018) ("Student loan servicers serve as a kind of middle-man between lenders and
27   borrowers."); (*see also* ECF No. 25-4.) Indeed, all federal student loans are

28

1   "assigned" to loan servicers, and borrowers are specifically instructed to direct all
2   questions to their respective servicers. (*Id.* at 2-3.)

3        Although Plaintiff claims that he has a relationship with the USDE because it
4   "guarantees all federal student loans" and "could be considered a creditor," these
5   relationships are too attenuated to sufficiently "identify the relationship or experience
6   of [a] consumer with respect to" the USDE in violation of § 1681b(c)(2). Thus,
7   because Plaintiff does not (and cannot) allege that Experian disclosed his relationship
8   with any particular servicer of his student loans, he cannot plausibly claim that
9   Experian's disclosure of his aggregate federal student loan debt ran afoul of
10  § 1681b(c)(2).

11       **B.   Plaintiff Has Failed To Allege A Willful Violation**

12       Even if Experian's disclosure of federal student loan debt did somehow
13  impermissibly disclose the relationship of Plaintiff with the USDE, Plaintiff has not
14  (and cannot) plausibly allege that Experian's violation of § 1681b(c)(2) was willful.
15  As Experian explained in its opening brief, a willful violation of the FCRA requires
16  Plaintiff to show that Experian acted either with actual knowledge that its  actions
17  violated the FCRA or in "reckless disregard" of its statutory duty. *Safeco Ins. Co. v.*
18  *Burr*, 551 U.S. 47, 57-58 (2007) (analyzing 15 U.S.C. § 1681n(a)). As the Supreme
19  Court made clear in *Safeco*, a defendant does not act willfully under 15 U.S.C.
20  § 1681n(a) unless its conduct was "objectively unreasonable" in light of "legal rules
21  that were 'clearly established' at the time." *Id.* at 69-70 (quoting *Saucier v. Katz*, 533
22  U.S. 194, 202 (2001)). Thus, a claim for a willful violation fails unless the conduct
23  at issue was clearly unlawful as established by either "pellucid statutory text" or an
24  "authoritative" interpretation of that text by a federal court of appeals or the
25  Consumer Finance Protection Bureau ("CFPB").[4] *Id.* at 70; *see also Levine v. World*
26  *Fin. Network Nat'l Bank*, 554 F.3d 1314, 1318-19 (11th Cir. 2009) (holding that a

27       [4] *Safeco* refers to the Federal Trade Commission ("FTC"), the agency tasked
28  with enforcing the FCRA in 2007. In 2011, the CFPB took over the FTC's
    enforcement responsibilities, prompting the FTC to withdraw its statutory comments.

defendant "does not recklessly violate the [FCRA] when it acts in accord with an objectively reasonable interpretation of the Act.").

As Plaintiff has already acknowledged, there is "a lack of case law or regulatory guidance on the issue." (*See* ECF No. 24 at 2.)   And, as Experian demonstrated in its opening brief, courts have made clear that Congress intended prescreening to occur in the context of student loans when it enacted the Higher Education Act ("HEA"). *See McDonald v. Nelnet, Inc.*, 477 F. Supp. 2d 1010, 1014-15 (E.D. Mo. 2007); *Schwartz v. Goal Financial LLC*, 485 F. Supp. 2d 170, 174-78 (E.D. N.Y. 2007). These courts have never indicated that disclosing student loan information in the prescreening process runs afoul of § 1681b(c)(2). *Id.* Tellingly, Plaintiff makes no attempt to address these authorities.  Instead, he baselessly claims that the language of the statute is clear, and that the issue of willfulness is question of fact.   But such conclusory assertions are not sufficient to establish a willful violation. *See*, *e.g.*, *Braun*, 14 F. Supp. 3d at 398. Indeed, "[w]ithout clear authority to the contrary, Experian's procedures do not amount to a willful violation" of the prescreening process. *Sheldon v. Experian Info. Sols., Inc.*, No. 08-cv-5193, 2010 WL 3768362, at *6 (E.D. Pa. Sept. 28, 2010); *see also Banga v. Experian Info. Sols., Inc.*, No. 09-cv-04867, 2013 WL 5539690, at *6 (N.D. Cal. Sept. 30, 2013)  (finding that plaintiff failed to establish a willful violation where he "does not cite any statutory language or any guidance from the courts of appeal or the Federal Trade Commission that renders Experian's reading of the FCRA objectively unreasonable").  Thus, even if Experian's purported disclosure of Plaintiff's federal student loan debt ran afoul of § 1681b(c)(2), Plaintiff still could not show that Experian's violation was willful. Accordingly, Plaintiff's second cause of action must be dismissed.

### III.  Leave To Amend Should Not Be Granted

A court may dismiss a claim without leave to amend if the plaintiff cannot cure a defect by amending to allege additional facts. *See Lopez v. Smith*, 203 F.3d 1122,

1130 (9th Cir. 2000); *DeSoto v. Yellow Freight Sys. Inc.*, 957 F.2d 655, 658 (9th Cir. 1992); *Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988). As Experian argued in its opening brief, Plaintiff cannot allege any additional facts that would save his claims because his claims are based on a misunderstanding of the prescreening process and the requirements under the FCRA. While Plaintiff asserts that he should be afforded an opportunity to amend his complaint, he conspicuously fails to identify a single factual allegation he would make to cure the numerous defects Experian has identified in his claims. Accordingly, dismissal of the complaint as to Experian without leave to amend is warranted.

## <u>CONCLUSION</u>

For the foregoing reasons, and as set forth in Experian's opening brief, Plaintiff's complaint as to Experian should be dismissed in its entirety pursuant to Rule 12(b)(6).

Dated:      August 30, 2019

By: */s/ Ryan D. Ball*
_____

Richard J. Grabowski
Ryan D. Ball
Jack Williams IV
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612.4408

*Attorney for Defendant*
*Experian Information Solutions, Inc*