# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYCE ABBINK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., *et al.*<br><br>Defendants. | Case No. 8:19-cv-01257-JFW-PJWx<br><br>Hon. John F. Walter<br><br>**[PROPOSED] STATEMENT OF DECISION GRANTING DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>Date:      September 16, 2019<br>Time:      1:30 p.m.<br>Location: 7A<br><br>Complaint Filed: June 21, 2019 |

## STATEMENT OF DECISION

Plaintiff Bryce Abbink ("Plaintiff") alleges that Defendant Experian Information Solutions, Inc. ("Experian") willfully violated the Fair Credit Reporting Act ("FCRA") by furnishing his consumer report to Defendant Lend Tech Loans, Inc. ("Lend Tech"), a purported mortgage broker who certified that it intended to offer consumers firm offers of credit for mortgage refinancing. Specifically, Plaintiff alleges that Experian willfully violated 15 U.S.C §§ 1681b(c)(1) and 1681e(a) by furnishing his consumer report to Lend Tech because it should have known that Lend Tech lacked a permissible purpose and impermissibly sold or transmitted his total federal student loan debt to Defendant Unified Document Services, LLC ("UDS"). Plaintiff further alleges that Experian willfully violated § 1681b(c)(2) by purportedly disclosing his total federal student loan debt to Lend Tech, because such disclosure impermissibly identified his relationship to the U.S. Department of Education ("USDE").

On August 14, 2019, Experian moved to dismiss Plaintiff's Complaint (ECF No. 1, "Compl.") pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff had failed to state sufficient facts to plausibly allege that Experian willfully violated the FCRA. (*See* ECF No. 25.) On August 26, 2019, Plaintiff filed his opposition (ECF No. 34), and Experian filed its reply on August 30, 2019 (ECF No. 37.) Based on the arguments advanced by the parties, and for the reasons set forth below, the Court **GRANTS** Experian's motion and dismisses Plaintiff's Complaint as to Experian **WITHOUT LEAVE TO AMEND**.

## BACKGROUND

### I. Request for Judicial Notice

Experian filed a request for judicial notice ("RJN") in support of its motion to dismiss, asking the court to take judicial notice of two websites maintained by the USDE. (*See* ECF No. at 25-2.) Plaintiff did not oppose Experian's request. Because Exhibits 1 and 2 are webpages maintained by the USDE, a reliable governmental

entity, they are properly subject to judicial notice pursuant to Federal Rule of Evidence 201. *See*, *e.g.*, *Daniels–Hall v. Nat. Ed. Assoc.*, 629 F.3d 992, 999 (9th Cir. 2010).

## II. Prescreening And The Fair Credit Reporting Act

The FCRA describes the circumstances under which a credit reporting agency ("CRA"), like Experian, may lawfully furnish a consumer report to a third party; these are called "permissible purposes." 15 U.S.C. § 1681b; *see also Stergiopoulos v. First Midwest Bancorp, Inc.*, 427 F.3d 1043, 1045-46 (7th Cir. 2005). A CRA has a permissible purpose (and thus may lawfully) furnish a consumer report to "a person which it has reason to believe," among other things, "intends to use the information in connection with a credit transaction involving the consumer . . . and involving the extension of credit to, or review or collection of an account of, the consumer," 15 U.S.C. § 1681b(a)(3)(A), or in connection with an unsolicited (*i.e.*, prescreen) credit transaction that "consists of a firm offer of credit," *id.* § 1681b(c)(1)(B). This case concerns the latter—*i.e.*, prescreen reports.

In prescreening, a user, such as a lender, or an agent acting on the lender's behalf (like a mortgage broker), submits pre-selected credit criteria to a CRA, who returns a list of consumers who meet that criteria, called a prescreen list. *See Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839-41 (5th Cir. 2004) (describing prescreening process); *see also Harris v. Database Mgmt. & Mktg., Inc.*, 609 F. Supp. 2d 509, 513 (D. Md. 2009). The lender, in return, agrees to extend a firm offer of credit to all consumers who meet the preselected criteria. *Kennedy*, 369 F.3d 839-41. Prescreening is one of the few instances where the FCRA allows consumer credit information to be disclosed to a third party without the consumer's knowledge or consent. *Id.* By allowing prescreening, Congress struck a balance between the consumer's right to privacy and the value a consumer receives from a firm offer of credit. *See*, *e.g.*, *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 725 (7th Cir. 2004).

### III. Factual Background

This case arises out of a solicitation Plaintiff purportedly received from UDS, advertising a student loan consolidation program. (*See* Compl.) The solicitation indicated that Plaintiff had approximately $78,500 of federal student loan debt, which Plaintiff alleges Experian reported to Lend Tech on or around January 21, 2019. (*Id.* at ¶¶ 64-68, Ex. A.) On information and belief, Plaintiff alleges that Lend Tech sold or transmitted Plaintiff's credit information to UDS, who then sent Plaintiff the solicitation on January 25, 2019. (*Id.* at ¶¶ 31-32.) Plaintiff does not, however, allege that Experian had any interactions with UDS, or that it had any knowledge that Lend Tech resold Plaintiff's credit information to UDS.

Plaintiff commenced this action on June 21, 2019, alleging that Experian willfully violated § 1681b(c)(1) because Lend Tech never had any permissible purpose to obtain Plaintiff's consumer report. (*Id.* at ¶¶ 49-51.) Plaintiff further alleges that Experian should have known that Lend Tech lacked a permissible purpose based on certain "red flags." (*Id.* at ¶ 56.) Specifically, Plaintiff asserts that a reasonable investigation of Lend Tech would have uncovered that Lend Tech—who held itself out as "a mortgage lender"—did not "possess any license to conduct any financial services or mortgage lending or originating in the State of California." (*Id.* at ¶ 53.) In addition, Plaintiff claims that Lend Tech provided Experian with a nonworking telephone number and an outdated business address. (*Id.* at ¶ 55.) Despite these "red flags," Plaintiff alleges that Experian accepted Lend Tech's certification of its permissible purpose "at face value." (*Id.* at ¶ 57.) Based on these allegations, Plaintiff asserts that Experian willfully violated § 1681e(a) by: (i) "failing to implement reasonable procedures to limit the furnishing of a consumer report for a permissible purpose"; and (2) "failing to make a reasonable effort to verify the identity of Lend Tech Loans and the supposed permissible purpose for which the information was being sought." (*Id.* at ¶ 52.)

Plaintiff also alleges that Experian willfully violated § 1681b(c)(2) by providing Lend Tech with Plaintiff's total outstanding federal student loan debt. (*Id.* at ¶ 65.) According to Plaintiff, the "total sum of federal student loan debt directly identifies the relationship or experience of Plaintiff" to the USDE because the USDE owns all federal student loan debt. (*Id.* at ¶ 66.) As such, Plaintiff alleges that Experian willfully violated § 1681b(c)(2) by identifying the relationship between Plaintiff and a particular creditor (*i.e.*, the USDE). (*Id.* at ¶ 67.)

Based on these purported willful violations, Plaintiff seeks to represent a nationwide class to recover "statutory damages, reasonable cost and attorneys' fees, and such other relief as the Court deems necessary." (*Id.* at ¶¶ 61, 70.) Plaintiff does not, however, allege that he suffered any actual damages as a result of Experian's purported misconduct.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 547 (2007)). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, "the nonconclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service,* 572 F.3d 962, 969 (9th Cir. 2009). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

In reviewing a motion to dismiss under Rule 12(b)(6), the Court assumes the truth of all factual allegations and construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis,* 295 F.3d 890, 895 (9th Cir. 2002). However, the Court does not accept legal conclusions as true merely because

they are cast in the form of factual allegations. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003). When ruling on a motion to dismiss, the Court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the Court takes judicial notice. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

## DISCUSSION

### I.   Count I Fails To State A Claim

Plaintiff's first cause of action alleges that Experian willfully violated §§ 1681b(c) and 1681e(a) by furnishing his consumer report to Lend Tech based on Lend Tech's representation that it intended to issue firm offers of credit. (*See* Compl. at ¶ 48.) Specifically, Plaintiff alleges that Lend Tech did not have a permissible purpose to obtain his consumer report because "he did not have any relationship with Lend Tech Loans, has never conducted any business with Lend Tech Loans, and has never provided any authorization to Lend Tech Loans to obtain his consumer report." (*Id.* at ¶¶ 49-50.) Plaintiff mistakes the requirements of § 1681b(c)(1). As explained above, that section governs the prescreening process, and "permits a consumer reporting agency to furnish a creditor with a consumer report in connection with a credit transaction not initiated by the consumer if 'the transaction consists of a firm offer of credit.'" *Kennedy*, 369 F.3d at 839-40 (quoting 15 U.S.C. § 1681b(c)(1)); *see also Premium Morg. Corp. v. Equifax Info. Servs., LLC*, No. 07-cv-6349, 2008 WL 4507613, at *2 (W.D.N.Y. Sept. 30, 2008).

Here, Plaintiff has failed to allege any facts showing that Experian knew, or had any indication, that Lend Tech was not issuing firms offers of credit or that it was reselling Plaintiff's information to UDS. To the contrary, Plaintiff affirmatively alleges that Experian furnished his consumer report based on Lend Tech's "representation that it intended to use [the] report for the purpose of a firm offer of credit." (Compl. at ¶ 48.) Thus, by Plaintiff's own allegations, Experian had reason

to believe it was furnishing Plaintiff's consumer report in accordance with § 1681b(c)(1). See *Henderson v. Corelogic Nat'l Background Data, LLC*, 161 F. Supp. 3d 389, 397 n.7 (E.D. Va. 2016).

Nevertheless, Plaintiff cites to the Ninth Circuit's decision in *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665 (9th Cir. 2010), arguing that "Section 1681e requires more from a credit reporting agency than merely obtaining a subscriber's general promise to obey the law."[1] (Doc. 34 at 13.) But "a plaintiff bringing a claim that a reporting agency violated the 'reasonable procedures' requirement of § 1681e must first show that the reporting agency released the report in violation of § 1681b." *Washington v. CSC Credit Servs. Inc.*, 199 F.3d 263, 267 (5th Cir. 2000); *see also Perrill v. Equifax Info. Servs., LLC*, 205 F. Supp. 3d 869, 878 (W.D. Tex. 2016); *Baker v. Trans Union LLC*, No. 07-cv-8032, 2008 WL 4838714, at *5 (D. Ariz. Nov. 6, 2008). Because Plaintiff fails to demonstrate how Experian violated § 1681b(c), the Court finds that his first cause of action must be dismissed for this reason alone.

Moreover, the Complaint fails to identify a single process or procedure Experian lacked, or failed to follow, in evaluating whether Lend Tech had a permissible purpose. Section 1681e(a) mandates that CRAs implement reasonable procedures to ensure compliance with § 1681b, including requiring "[e]very consumer reporting agency [to] make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report." 15 U.S.C. § 1681e(a). Plaintiff does not allege that Experian failed to verify the identity of Lend Tech when it first began transmitting prescreens, and he concedes that Experian obtained Lend Tech's certification of its permissible purpose prior to furnishing prescreen reports. (Compl. at ¶ 48.) Plaintiff nevertheless claims that Experian lacked reasonable procedures

---

[1] Notably, the Ninth Circuit expressly refused to "opine on the meaning or scope of . . . 1681b(c) or on the practice of obtaining information from credit reporting agencies to permit the extension of offers to prescreened customers." *Pintos*, 605 F.3d at 676 n.2

because Experian allegedly failed to uncover that Lend Tech did "not possess any license to conduct any financial services" (*id.* at ¶ 54), and disclosed on Plaintiff's personal consumer report "a nonworking telephone number and business address that does not match the current address on [Lend Tech's California business filing" (*id.* at ¶ 55). Neither of these purported failures establishes that Experian lacked reasonable procedures to ensure that Lend Tech had a permissible purpose under § 1681b.

First, Plaintiff is wrong that Lend Tech's purported lack of a lending license should have raised questions about its permissible purpose. The California Department of Real Estate's website plainly reveals that Lend Tech obtained a corporate broker's license on August 11, 2017.[2] And, because "a real estate broker can perform services for both lenders and borrowers in connection with loans secured by liens on real property," *Bock v. Cal. Capital Loans, Inc.*, 216 Cal. App. 4th 264, 269 (2013), there was nothing suspect about Lend Tech's lack of a lending license. Second, Lend Tech's purportedly outdated address and nonworking telephone "at the time the information was published to Plaintiff's consumer report" (whenever that might be) does not plausibly demonstrate that Experian failed to comply with its obligations under § 1681e(a) at the time Lend Tech's pulled Plaintiff's report. (ECF No. 34 at 17.) Contrary to Plaintiff's contentions, Experian it is not required to verify Lend Tech's permissible purpose each time it obtained prescreen credit reports. *See Pietrafesa v. First Am. Real Estate Info. Servs., Inc.*, No. 05-cv-1450, 2007 WL 710197, at *4 (N.D.N.Y. Mar. 6, 2007) ("It would be unreasonable to require credit reporting agencies . . . to independently investigate each and every request to determine its legitimacy." (citing *Boothe v. TRW Credit Data*, 557 F. Supp. 66, 71 (S.D.N.Y. 1982)).

In any event, the Court finds that Plaintiff's allegations fall well short of establishing that Experian acted willfully. An FCRA violation is willful where it is

---

[2] http://www2.dre.ca.gov/PublicASP/pplinfo.asp?License_id=02043494

committed either knowingly or with reckless disregard for the requirements imposed under the Act. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56-60 (2007). A CRA acts in "reckless disregard" for purposes of the FCRA where its actions involve "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* at 68 (internal quotation marks omitted). "In order to survive a motion to dismiss, the plaintiff's complaint must allege specific facts as to the defendant's mental state . . . . Merely stating that the violation was 'willful' or 'negligent' is insufficient." *Monroe v. Guilford Cty. Dist. Court*, No. 15-cv-580, 2015 WL 4873002, at *1–2 (M.D.N.C. Aug. 13, 2015) (quoting *Braun v. Client Servs., Inc.*, 14 F. Supp. 3d 391, 397 (S.D.N.Y. 2014) (collecting cases)); *see also Mnatsakanyan v. Goldsmith & Hull APC*, No. 12-cv-4358, 2013 WL 10155707, at *7 (C.D. Cal. May 14, 2013) (dismissing willfulness claim where plaintiff failed to allege facts showing defendant's "state of mind" in procuring plaintiff's consumer report).

Here, the Complaint does not include any factual allegations concerning Experian's state of mind or its knowledge that Lend Tech was not using the prescreen reports for their intended purpose. As discussed, there is not a single allegation that Experian had any indication that Lend Tech did not send firm offers of credit or that it was reselling consumers' information to UDS. *Cf. Aleksic v. Experian Info. Sols., Inc.*, No. 13-cv-7802, 2014 WL 2769122, at *2 (N.D. Ill. June 18, 2014) (dismissing claim against Experian where plaintiff did "not allege that Experian had any reason to believe that Clarity's certifications of its information requests were false or to suspect that the entities for whom Clarity obtained the information, i.e., the Internet lenders, might use it for an impermissible purpose"). Rather, Plaintiff makes only generic and conclusory statements regarding the FCRA, and Experian's sale of "consumer reports to businesses, such as Lend Tech." (Compl. at ¶ 59.) This is not sufficient to state a willfulness claim under § 1681n. *See Braun*, 14 F. Supp. 3d at 398; *Mnatsakanyan*, 2013 WL 10155707, at *7; *Perl v. Plains Commerce Bank*, No. 11-cv-7972, 2012 WL 760401, at *2 (S.D.N.Y. Mar. 8, 2012). Indeed, "it is just as

possible, based on the factual allegations, that [Experian] made an innocent mistake." *Perl*, 2012 WL 760401, at *2. Accordingly, the Court **DISMISSES** Plaintiff's first cause of action.

## II. Count II Fails To State A Claim

Plaintiff's second cause of action alleges that Experian willfully violated the FCRA by purportedly disclosing Plaintiff's total federal student loan debt on the prescreen report sold to Lend Tech, which Plaintiff claims impermissibly identified his relationship with the USDE. (Compl. at ¶¶ 64-68.) As noted, a willful violation of the FCRA requires Plaintiff to show that Experian acted either with actual knowledge that its actions violated the FCRA or in "reckless disregard" of its statutory duty. *Safeco*, 551 U.S. at 57-58 (2007). As the Supreme Court made clear in *Safeco*, a defendant does not act willfully under 15 U.S.C. § 1681n(a) unless its conduct was "objectively unreasonable" in light of "legal rules that were 'clearly established' at the time." *Id.* at 69-70 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). Thus, a claim for a willful violation fails unless the conduct at issue was clearly unlawful as established by either "pellucid statutory text" or an "authoritative" interpretation of that text by a federal court of appeals or the governing regulatory agency. *Id.* at 70.

As the parties have acknowledged, there is "a lack of case law or regulatory guidance on the issue." (*See* ECF No. 24 at 2.) However, courts have made clear that Congress intended prescreening to occur in the context of student loans when it enacted the Higher Education Act ("HEA"). *See McDonald v. Nelnet, Inc.*, 477 F. Supp. 2d 1010, 1014-15 (E.D. Mo. 2007); *Schwartz v. Goal Fin. LLC*, 485 F. Supp. 2d 170, 174-78 (E.D. N.Y. 2007). These courts have never indicated that disclosing student loan information in the prescreening process runs afoul of § 1681b(c)(2). *Id.* Plaintiff's conclusory assertions to the contrary are not sufficient to establish a willful violation. *See, e.g., Braun*, 14 F. Supp. 3d at 398. Indeed, "[w]ithout clear authority to the contrary, Experian's procedures do not amount to a willful violation" of the

prescreening process. *Sheldon v. Experian Info. Sols., Inc.*, No. 08-cv-5193, 2010 WL 3768362, at *6 (E.D. Pa. Sept. 28, 2010); *see also Banga v. Experian Info. Sols., Inc.*, No. 09-cv-04867, 2013 WL 5539690, at *6 (N.D. Cal. Sept. 30, 2013)  Thus, even if Experian's purported disclosure of Plaintiff's federal student loan debt ran afoul of § 1681b(c)(2), Plaintiff still could not show that Experian's violation was willful.[3] Accordingly, the Court **DISMISSES** Plaintiff's second cause of action.

## CONCLUSION

In light of the forgoing, the Court find that Plaintiff has failed to plausibly allege that Experian willfully violated the FCRA by furnishing his consumer report to Lend Tech.  The Court also finds that leave to amend would be futile, particularly given Plaintiff's failure to identify a single factual allegation he would make to cure the defects identified above. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). Accordingly, the Court hereby **GRANTS** Experian's Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) **WITHOUT LEAVE TO AMEND**.

IT IS SO ORDERED.

Dated: _____, 2019          _____
                                      The Honorable John F. Walter
                                      United States District Court Judge

---

[3] The Court is skeptical of Plaintiff's claim that Experian's disclosure of his total federal student loan debt identified his relationship with the USDE. As Experian persuasively argues, a consumer does not have a direct relationship with the USDE. Rather, the servicer of a loan is the entity with whom a borrower has a relationship, and who administers the loan. *See Student Loan Servicing All. v. D.C.*, 351 F. Supp. 3d 26, 39 (D.D.C. 2018) ("Student loan servicers serve as a kind of middle-man between lenders and borrowers."); (*see also* ECF No. 25-4.) Indeed, all federal student loans are "assigned" to loan servicers, and borrowers are specifically instructed to direct all questions to their respective servicers. (ECF No. at 2-3.) However, because Plaintiff cannot allege that Experian acted willfully, the Court need to not resolve this issue.