Richard J. Grabowski (State Bar No. 125666)
Ryan D. Ball (State Bar No. 321772)
Jack Williams IV (State Bar No. 309154)
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, California 92612
Tel:  949.851.3939
Fax:  949.553.7539
Email: rgrabowski@jonesday.com
Email: rball@jonesday.com
Email: jackwilliams@jonesday.com

Attorneys for Defendant
EXPERIAN INFORMATION SOLUTIONS, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRYCE ABBINK,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., et al.,<br><br>　　　　　Defendants. | Case No. 8:19-cv-01257-JFW-PJWx<br><br>Hon. John F. Walter<br><br>**DECLARATION OF RYAN BALL IN SUPPORT OF AMENDED JOINT STIPULATION TO EXTEND THE DEADLINE TO FILE PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Complaint filed: June 21, 2019 |

I, Ryan Ball, declare as follows:

1. I am an attorney at Jones Day, lead counsel for Defendant Experian Information Solutions, Inc. ("Experian") in the above-titled action. I make this declaration in support of the parties' Stipulation to Extend the Deadline to File Plaintiff's Motion for Class Certification. I have personal knowledge of the matters set forth herein, and if called upon as a witness, could and would competently testify thereto.

2. The parties have been actively litigating this case and working cooperatively and efficiently to the greatest extent possible. Plaintiff Bryce Abbink ("Plaintiff") has served Experian with his Requests for Production (Set One), Interrogatories (Set One), Requests for Production (Set Two), Interrogatories (Set Two), and Requests for Admission (Set One), to which Experian has responded.

3. Experian served Plaintiff with its Requests for Production (Set One) and Interrogatories (Set One), to which Plaintiff has responded.

4. On November 21, 2019, Plaintiff's counsel deposed Experian's Federal Rule of Civil Procedure 30(b)(6) witness regarding issues related to class certification.

5. On December 6, 2019, I will depose Plaintiff.

6. On November 14, 2019, Plaintiff's counsel emailed me, detailing numerous discovery disputes concerning Experian's discovery responses.

7. At my direction, on November 22, 2019, Justin Potesta, an attorney in my firm and also counsel of record for Experian in this case, emailed Plaintiff's counsel, explaining Experian's position concerning the discovery disputes.

8. Consistent with Magistrate Judge Patrick J. Walsh's informal discovery dispute procedures, I met and conferred with Plaintiff's counsel by telephone on Tuesday, November 26, 2019, and reached a resolution regarding some, but not all, of the parties' disputes.

9. The parties' remaining discovery disputes primarily concern the scope of discovery as to Plaintiff's class claims. Plaintiff alleges that Lend Tech Loans, Inc. obtained his consumer report from Experian on January 21, 2019. Plaintiff has sought discovery concerning Lend Tech's orders of consumer reports beyond this January 21, 2019 order. Experian objected to this discovery. Plaintiff asserts that his putative class encompasses all individuals whose consumer reports Lend Tech received based upon the same permissible purpose, which would include all individuals whose consumer reports Lend Tech received during its entire relationship with Experian. Plaintiff argues that discovery about Lend Tech's other orders is relevant for both merits and class issues. Experian contends that Plaintiff has failed to make a prima facie showing that a class exists, particularly beyond those consumers included in the January 21, 2019 order that included Plaintiff's consumer report.

10. On November 27, 2019, counsel for Plaintiff emailed Judge Walsh's chambers consistent with Judge Walsh's informal discovery dispute resolution procedures. I was CC'ed on that email. A true and correct copy of the email is attached as Exhibit 1.

11. The parties require additional time to work through these remaining discovery disputes. This additional time will allow the parties to resolve their disputes prior to briefing class certification, through Judge Walsh's informal procedures or, if necessary, through formal briefing, which will potentially avoid the need for unnecessary motion practice and wasted judicial efforts concerning class certification.

12. The parties' outstanding discovery dispute is directly related to class discovery and may impact the arguments made on class certification. Whether Plaintiff receives discovery concerning Lend Tech orders beyond the January 21, 2019 order that included Plaintiff's consumer report will likely affect the parties' arguments concerning commonality, typicality, fair and adequate representation, and

predominance elements of Federal Rule of Civil Procedure 23. In light of these disputes, Plaintiff requires additional time to draft his motion for class certification.

13. The current deadline of December 16, 2019 also requires the parties to prepare their respective briefs during multiple federal holidays at the end of December and beginning of January, and will require the parties to brief class certification before a resolution to class discovery issues is reached.

14. The extension of the class certification deadline sought in the parties' stipulation is not being sought for any improper purpose and will not disrupt any other deadline. To the contrary, the requested extension will conserve the resources of the parties and the Court, and will potentially avoid the need for additional or supplemental briefing related to class certification.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this the 4th day of December, 2019 at Irvine, California

By: */s/ Ryan Ball*
Ryan Ball

# EXHIBIT 1

**Ball, Ryan D.**

| | |
|---|---|
| **From:** | Taylor Smith <tsmith@woodrowpeluso.com> |
| **Sent:** | Wednesday, November 27, 2019 3:40 PM |
| **To:** | pjw_chambers@cacd.uscourts.gov |
| **Cc:** | Ball, Ryan D.; Potesta, Justin A.; Grabowski, Richard J.; Williams IV, Jack |
| **Subject:** | Abbink v. Experian - 8:19-cv-01257-JFW-PJWx - Request for Discovery Conference |
| **Attachments:** | Abbink v. Experian - Plaintiff's Interrogatories to Experian (Set Two).pdf; Abbink v. Experian - Plaintiff's Interrogatories to Experian (Set One).pdf; Abbink v. Experian - Experian's Responses to Interrogatories (Set One).pdf; Abbink v. Experian - Experian's Responses to Interrogatories (Set Two).pdf; Abbink v. Experian - Plaintiff's RTP to Experian (Set One).pdf; Abbink v. Experian - Plaintiff's RTP to Experian (Set Two).pdf; Abbink v. Experian - Experian's Responses to RTP (Set One).pdf; Abbink v. Experian - Experian's Responses to RTP (Set Two).pdf |

Dear Ms. Martinez,

Pursuant to the Honorable Patrick J. Walsh's procedures, Plaintiff Bryce Abbink ("Plaintiff") hereby provides his disputes regarding Defendant Experian Information Solutions, Inc.'s ("Experian") responses to discovery along with Experian's responses to each dispute. The Parties would prefer to schedule a conference call with Judge Walsh to discuss the disputes between December 9th and the 11th.

Additionally, please find attached Plaintiff's original discovery requests and Experian's responses to each.

Sincerely,
Taylor Smith

**I. Issues with respect to Experian's Responses to Interrogatories**

*Interrogatory No. 3*

**Dispute:** This interrogatory seeks the total number of Persons whose Consumer Reports were provided to Lend Tech during the relevant time period. Throughout most of its responses, Experian repeatedly objects claiming that the interrogatories are not limited in time or scope. Instruction No. 6 specifically states, "Unless otherwise stated, the relevant period of time is June 21, 2017 to the present." As such, this interrogatory and all others are limited to this relevant time period and the objection should be withdrawn. Moreover, this case is an alleged class action with a class period spanning from June 21, 2017 to the present. (*See* Dkt. 1, ¶ 35.) This case does not, as Experian claims, concern a single inquiry from Lend Tech. Instead, Plaintiff seeks to represent all persons whose consumer reports were provided to Lend Tech during the class period based on the same purported permissible purpose. Given that Experian has only identified one permissible purpose during the class period, the class consists of all persons whose consumer reports were provided to Lend Tech from June 21, 2017 through the present. As such, the requested information is permitted

by the Federal Rules of Civil Procedure. **See Fed. R. Civ. P. 26(b)(1)** ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . .").

**Relief Sought:** Experian should supplement its response and provide the total number.

**Experian's Response**: Plaintiff asserts that "Experian repeatedly objects claiming that the interrogatories are not limited in time or scope." Not so. Experian's objections plainly state that Plaintiff's interrogatories are "not *reasonably* limited in time or scope." Indeed, Experian responded to this Interrogatory by explaining that Lend Tech pulled 100,000 consumer reports on January 21, 2019, an answer appropriately limited to the same order in which Lend Tech pulled Plaintiff's consumer report based on the same certification it provided in connection with the pull.

As shown in his dispute statement, Plaintiff seeks information about Lend Tech's receipt of consumer reports beyond that January 21, 2019, order solely to substantiate his class claims. But before seeking such class discovery, Plaintiff bears the burden of making a "prima facie showing" that a class exists. **See Mantolete v. Bolger**, 767 F.2d 1416, 1424 (9th Cir. 1985), **as amended** (Aug. 27, 1985). Plaintiff cannot make any showing that *any* class exists, much less a class composed of consumers whose consumer reports Lend Tech may have pulled at any time other than the January 21, 2019 order.

Plaintiff's claims hinge on a letter he received from Unified Document Services LLC ("UDS"). Because the UDS letter referenced the total amount of Plaintiff's federal student loans, Plaintiff believes that UDS must have obtained that information from his consumer report. But Plaintiff does not (and cannot) allege that Experian sent UDS his consumer report. Instead, Plaintiff alleges that Experian sent his consumer report to Lend Tech, and that Lend Tech in turn sent the consumer report to UDS. But there is absolutely no support for Plaintiff's allegation that Lend Tech shared his consumer report with UDS. To the contrary, Plaintiff's claims against Experian were built on the allegation that Experian disclosed "the total sum of *federal* student loan debt that Plaintiff and each Class Member possesses." (Complaint, ECF No. 1 at ¶¶ 12, 65-66 (emphasis added).) The letter Plaintiff received from UDS that sparked this entire lawsuit identified his total "*federal* student loan[]" amount. (*Id.* at Ex. A (emphasis added).) But, as Plaintiff knows from Experian's documents and discovery responses, *Experian did not disclose his "federal" student loan amount*, only the total student loan amount without identifying whether a loan is privately or federally funded. Furthermore, Lend Tech did have a permissible purpose under the FCRA to access Plaintiff's consumer report—to send him a firm offer of credit—and Plaintiff has not alleged, nor shown, that he (or anyone else) did not receive a firm offer of credit from Lend Tech. This is fatal to his FCRA claim.

Worse still, there is absolutely no reason to believe that any other consumer received a letter from UDS—much less that such a consumer's "federal student loan" information came from Experian via Lend Tech—or that Lend Tech never sent those consumers a firm offer of credit. Accordingly, Plaintiff has no basis to assume that each time Lend Tech initiated an iScreen pull, it did so to

ultimately sell that information to UDS. Indeed, Plaintiff cannot even show that Lend Tech did so with his own consumer report. Accordingly, Plaintiff failed to carry his burden of making a "prima facie" showing that a class exists, and his requested discovery for anything beyond the January 21, 2019 iScreen order is an improper "fishing expedition." **See Rivera v. NIBCO, Inc.**, 364 F.3d 1057, 1072 (9th Cir. 2004).

*Interrogatory No. 8*

**Dispute:** This interrogatory seeks all requests that Lend Tech submitted to obtain consumer reports from Experian between June 21, 2017 and today. Once again, Experian's objections to time and scope should be withdrawn. Additionally, this request does not seek information that is protected from disclosure pursuant to **15 U.S.C. § 1681b**. Instead, this interrogatory seeks Lend Tech's *requests* not the consumer reports that Lend Tech received. Moreover, this case continues (as always) to concern Experian's relationship with Lend Tech during the relevant time period. The requests that Lend Tech submitted are directly relevant to both merits and class issues. That is, as the evidence has shown, Experian operated a "set it and forget it" policy as it applied to Lend Tech, which allowed Lend Tech to pull whatever consumer reports it pleased absent any permissible purpose in violation of the FCRA. **See 15 U.S.C. § 1681e(a)** ("No consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in section 1681b of this title."). Therefore, Lend Tech's requests are necessary to determine what information Experian knew and when it knew the information. Additionally, the requests are relevant to the issue of class certification. That is, if Lend Tech's requests for consumer reports changed substantially through the class period, that information is relevant to the issue of commonality, typicality, and predominance.

**Relief Sought:** Please withdraw the objections and provide a complete response to this interrogatory without further delay.

**Experian's Response**: Experian provided Plaintiff a document reflecting exactly what information Lend Tech requested and received about consumers, including Plaintiff, on January 21, 2019. **See** EXP-ABBINK000192. Plaintiff contends that he is entitled to more, in part to substantiate his class claims. As Experian explained in response to Plaintiff's dispute concerning Interrogatory No. 3, Plaintiff has no basis to conduct class discovery at all, much less discovery beyond the information Experian has already given Plaintiff about Lend Tech's January 21, 2019, order. For the same reasons Experian explained above, Plaintiff has no basis to seek class discovery through Interrogatory No. 8.

Recognizing this, Plaintiff contends that Lend Tech's other requests are relevant to the merits of this case. Plaintiff's Complaint alleges that Experian violated the FCRA by "fail[ing] to make a reasonable effort to verify the identity of Lend Tech Loans or to verify the purpose for which Lend Tech Loans intended to use the consumer report regarding Abbink." (Complaint, ECF No. 1 at ¶ 29.) This Interrogatory does not seek any information that could possibly be relevant to whether Experian verified Lend Tech or its permissible purpose before giving Lend Tech access to consumer reports.

Indeed, as Plaintiff knows, Experian conducted significant due diligence into Lend Tech and its permissible purpose before it gave Lend Tech access to the iScreen product.

Lacking any viable claim in his complaint, Plaintiff now shifts theories, contending that reviewing Lend Tech's requests (beyond the only one that included his consumer report) will assist him in determining whether Experian violated the FCRA's prohibition against furnishing "a consumer report to any person if [Experian] has reasonable grounds for believing that the consumer report will not be used for a [permissible] purpose." 15 U.S.C. § 1681e(a). Without support, Plaintiff contends that Lend Tech's request history will show "what information Experian knew and when it knew it." But this argument strains credulity. The mere fact that Lend Tech requested consumer reports—which it was contractually permitted to do—would in no way give Experian "reasonable grounds" to believe that Lend Tech would somehow misuse those consumer reports.

*Interrogatory No. 10*

**Dispute:** This interrogatory seeks to understand the number of Membership Applications that Experian received during the class period and the number of Membership Applications that were rejected. This information is relevant to whether Experian merely operates a rubber stamp approval process. Further, this interrogatory does not seek any specific information that is confidential, proprietary, privileged, or a trade secret. Instead, this interrogatory only seeks the numbers.

**Relief Sought:** Please withdraw the objections and provide a complete response without further delay.

**Experian's Response**: Plaintiff contends that this request is "relevant to whether Experian merely operates a rubber stamp approval process." But seeking this sensitive information for this purpose is worthless in this case, as Plaintiff already knows Experian conducts significant due diligence into prospective iScreen subscriber and, indeed, conducted significant due diligence into Lend Tech. This showing cannot be overcome by reviewing the total number of member applications or how many of those applications were rejected. Such propensity evidence is entirely irrelevant here.

**II. Issues with respect to Experian's Responses to Requests to Produce**

*Request to Produce No. 4*

**Dispute:** This request seeks to understand the total number of inquiries that Lend Tech submitted to Experian during the relevant time period, June 21, 2017 to the present. Consequently, Experian's objection that the request is vague "particularly because Plaintiff's Requests do not define the "Relevant Time Period" is simply incorrect. As such, Experian should withdraw this objection as well

as the objections that attempt to limit this case to one request. Instead, this case is an alleged class action that concerns all of Lend Tech's inquiries for consumer reports from June 21, 2017 to the present. Additionally, this case also concerns what information Experian knew about Lend Tech and when it knew the information.

**Relief Sought:** Lend Tech's inquires for consumer reports are relevant to both merits and class issues. Experian should supplement its response and provide responsive documents.

**Experian's Response:** As explained in response to Plaintiff's discovery dispute concerning Interrogatory No. 3, Plaintiff is not entitled to class discovery. *See Mantolete*, 767 F.2d at 1424. Plaintiff has no basis to believe that UDS ever sent any other consumer a letter referencing that consumer's "federal student loan" debt, let alone that UDS received that information from an Experian consumer report via Lend Tech. Indeed, as Plaintiff knows, Experian does not identify a consumer's "federal" student loan information in iScreen orders, but lists only the aggregate amount of the consumer's student loan debt, without mention of whether that debt is privately or federally owned. Moreover, Plaintiff has not even alleged that he did not receive a firm offer of credit directly from Lend Tech. Plaintiff's attempt to turn his isolated case into a class action without any reasonable basis to do so is improper.

Experian has provided Plaintiff with a document reflecting exactly what information Lend Tech requested and received about consumers, including Plaintiff, on January 21, 2019. *See* EXP-ABBINK000192. Plaintiff contends that he is entitled to more, arguing that information about Lend Tech's other orders will somehow show "what information Experian knew about Lend Tech and when it knew the information." But as discussed in Experian's response to Plaintiff's discovery dispute concerning Interrogatory No. 8, Lend Tech's other orders have nothing to do with the only claim stated in his complaint—whether Experian verified Lend Tech and its permissible purpose before providing Lend Tech with iScreen access. Experian did that, as Plaintiff knows.

Plaintiff's attempt to now assert an unpled theory of relief—that Experian somehow had some ongoing duty to investigate Lend Tech—is improper. Moreover, the mere fact that Lend Tech requested consumer reports—which it was contractually permitted to do—would in no way give Experian "reasonable grounds" to believe that Lend Tech would somehow misuse those consumer reports, and Plaintiff's newly-minted theory does not justify this sweeping discovery request. *See* 15 U.S.C. § 1681e(a).

<u>Requests to Produce Nos. 5, 6 & 7</u>

**Dispute:** These requests seek to identify potential class members. Similar to Request to Produce No. 4, Experian's objections should be withdrawn because the relevant time period was defined and the requests are limited to the class period defined in the Complaint. Also, this request does not call for a legal conclusion as Experian claims. Experian's objections are therefore without merit. Further,

Experian has only identified one permissible purpose that Lend Tech has ever provided them, which was identified in its membership application. Therefore, any and all consumer reports that Experian provided to Lend Tech were provided for the same permissible purpose.

**Relief Sought:** Experian should withdraw its objections and provide the relevant documents and data.

**Experian's Response**: Plaintiff's Requests for Production Nos. 5-7 seek (1) the total number of consumer reports Lend Tech ordered from Experian; (2) the identity of those consumers whose consumer reports Lend Tech ordered; and (3) how many times each consumer's report was pulled. As explained in his dispute, Plaintiff seeks this information solely to "identify potential class members." But, again, Plaintiff has not made even a basic showing that every consumer whose report Lend Tech received could possibly be part of his putative class. ***See Mantolete***, 767 F.2d at 1424. In order to be part of Plaintiff's class—i.e., to have a potentially viable claim under the FCRA—each consumer would need to show both that (1) they did not receive a firm offer of credit from Lend Tech (otherwise they do not have a permissible purpose claim); and (2) that UDS received their consumer report from Experian via Lend Tech. But Plaintiff has not even alleged that he did not receive a firm offer of credit from Lend Tech, nor does he have any reason to believe that UDS received his consumer report from Lend Tech. To the contrary, the UDS letter Plaintiff received identified his total "federal" student loan debt—information Experian unquestionably did not send Lend Tech. Plaintiff similarly has no basis to believe that numerous other consumers might be members of Plaintiff's proposed class.

*Requests to Produce Nos. 20, 21, & 22*

**Dispute:** These Requests seek: (1) records that evidence Lend Tech's use of the iScreen Product; (2) all requests for consumer reports that Lend Tech submitted via the iScreen Product; and (3) all criteria, attributes, or other data that Lend Tech submitted for each request for consumer reports. This information is relevant to both merits and class issues. That is, how Lend Tech utilized the iScreen Product, including the requests that were submitted and the attributes and criteria it selected are relevant to understand what information was available to Experian and whether it aligned with Lend Tech's purported permissible purpose. Further, this information is necessary for the purposes of class certification because Plaintiff needs to understand if class members were subjected to different requests or different personal attributes being disclosed about them, which may impact commonality, typicality, and predominance. Finally, all of the requests are again limited to the relevant time period. These requests also do not seek information protected as confidential, proprietary, privileged, and/or a trade secret—and any concerns that Experian has should be alleviated by the protective order in place.

**Relief Sought:** Please supplement this response and provide all relevant documents.

**Experian's Response:** As explained in response to Plaintiff's discovery dispute concerning Requests for Production 4-7, Plaintiff is not entitled to class discovery. **See Mantolete**, 767 F.2d at 1424. Again, Plaintiff has not shown that he did not receive an offer of credit from Lend Tech, and he has no basis to believe that UDS obtained his "federal" student loan amount from Experian via Lend Tech, particularly because Experian did not disclose Plaintiff's total "federal" student loan debt, only the aggregate total of his student loans from any source. For the January 21, 2019 order that included his consumer report, Experian has provided Plaintiff with a document that shows exactly what attributes Lend Tech requested through the iScreen product for that order. Plaintiff is not entitled to information about other orders that are completely irrelevant to his claims. Again, Lend Tech's mere use of the iScreen product would not give Experian "reasonable grounds" to believe that Lend Tech would somehow misuse those consumer reports, a theory of liability not pled in Plaintiff's Complaint, in any event. **See** 15 U.S.C. § 1681e(a).


--

Taylor T. Smith I  Woodrow & Peluso LLC
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
(720) 907-7628 (direct)
tsmith@woodrowpeluso.com I www.woodrowpeluso.com

CONFIDENTIALITY AND LIABILITY FOR MISUSE. The information contained in this communication is the property of Woodrow & Peluso, LLC.  It may be privileged, confidential, attorney work product, or otherwise exempt and is intended only for the individual to whom it was addressed and others who have been specifically authorized to receive it.  If you have received this communication in error and are not an intended recipient, please notify Woodrow & Peluso, LLC immediately and do not read, copy, use, or disclose this e-mail to others, including its attachments. After notifying Woodrow & Peluso, LLC, please delete the e-mail.

Pursuant to requirements related to practice before the U.S. Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for purposes of (i) avoiding penalties imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.