Richard J. Grabowski (State Bar No. 125666)
Ryan D. Ball (State Bar No. 321772)
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612.4408
Telephone: 949.851.3939
Facsimile: 949.553.7539
Email: rgrabowski@jonesday.com
Email: rball@jonesday.com

Attorneys for Defendant
EXPERIAN INFORMATION
SOLUTIONS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

BRYCE ABBINK, individually and on behalf of all others similarly situated,

Plaintiff,

v.

EXPERIAN INFORMATION SOLUTIONS, INC., et al.,

Defendant.

Case No. 8:19-cv-01257-JFW-PJWx

Hon. John F. Walter

**DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO RECONSIDER ORDER GRANTING MOTION TO DISMISS**

Date: February 3, 2020
Time: 1:30 p.m.
Location: 7A

Complaint Filed: June 21, 2019

## TABLE OF CONTENTS


Page

INTRODUCTION ........ 1

BACKGROUND ........ 1

STANDARD ........ 3

ARGUMENT ........ 5

I. Plaintiff's Motion Is Improper ........ 5

II. Plaintiff Does Not Establish Clear Error ........ 7

A. *Pintos* Does Not Support Plaintiff's Arguments ........ 7

B. Any Amendment Would Be Futile ........ 10

III. The Court Should Award Experian Its Fees And Costs ........ 13

CONCLUSION ........ 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**


*389 Orange Street Partners v. Arnold*,
179 F.3d 656 (9th Cir. 1999) .......... 4

*Baker v. Trans Union LLC*,
No. 10-cv-8038, 2010 WL 2104622 (D. Ariz. May 25, 2010) .......... 9, 10

*Banga v. Experian Info. Sols., Inc.*,
No. 09-cv-04867, 2013 WL 5539690 (N.D. Cal. Sept. 30, 2013) .......... 12

*Braun v. Client Servs., Inc.*,
14 F. Supp. 3d 391 (S.D.N.Y.) .......... 11, 12

*Carroll v. Nakatani*,
342 F.3d 934 (9th Cir. 2003) .......... *passim*

*Collins v. U.S. Citizenship & Naturalization Serv.*,
No. 11-cv-9909-JFW, 2013 WL 776244 (C.D. Cal. Feb. 6, 2013) .......... 4, 5, 7

*Figueroa v. Gates*,
No. 00-cv-4158, 2002 WL 31572968 (C.D. Cal. Nov. 15, 2002) .......... 5, 14

*Guimond v. Trans Union Credit Info. Co.*,
45 F.3d 1329 (9th Cir. 1995) .......... 11

*Harris v. Data Mgmt. & Mktg., Inc.*,
609 F. Supp. 2d 509 (D. Md. 2009) .......... 9

*Henderson v. Corelogic Nat'l Background Data, LLC*,
161 F. Supp. 3d 389 (E.D. Va. 2016) .......... 8, 9

*Ito v. Tokio Marine & Fire Ins. Co., Ltd.*,
No. 03-cv-6835-JFW, 2007 WL 9735845 (C.D. Cal. Feb. 21, 2007) .......... 4, 7

*Kennedy v. Chase Manhattan Bank USA, NA*,
369 F.3d 833 (5th Cir. 2004) .......... 8

*Perl v. Plains Commerce Bank*,
No. 11-cv-7972, 2012 WL 760401 (S.D.N.Y. Mar. 8, 2012) .......... 11, 12

*Pietrafesa v. First Am. Real Estate Info. Servs., Inc.*,
No. 05-cv-1450, 2007 WL 710197 (N.D.N.Y. Mar. 6, 2007) .......... 11

*Pintos v. Pacific Creditors Ass'n*,
605 F.3d 665 (9th Cir. 2010) .......... *passim*

*Reddy v. Gilbert Med. Transcription Serv., Inc.*,
No. 10-cv-524-JFW, 2010 WL 11509095 (C.D. Cal. June 11, 2010) .......... 5, 6

*Safeco Ins. Co. v. Burr*,
551 U.S. 47 (2007) .......... 12

**INTRODUCTION**

This Court properly granted Defendant Experian Information Solutions, Inc.'s ("Experian") motion to dismiss Plaintiff Bryce Abbink's ("Plaintiff") complaint against Experian with prejudice. As the Court properly found, Plaintiff cannot plausibly state a claim that Experian willfully violated the Fair Credit Reporting Act ("FCRA") by furnishing Plaintiff's credit information to Lend Tech Loans, Inc. ("Lend Tech"), and leave to amend would be futile.

In a last-ditch effort to save at least some of his fatally flawed claims, Plaintiff seeks reconsideration on the basis that the Court committed clear error in denying him leave to amend. Yet Plaintiff does not, and cannot, provide any valid reason for reconsideration. Instead, his motion consists entirely of arguments he previously made—or which he has no excuse for failing to make—in opposing Experian's motion to dismiss. This is improper under clear Ninth Circuit precedent and prior decisions from this Court. And, even if Plaintiff's arguments were permissible, they fall far short of demonstrating clear error. The Court should therefore deny Plaintiff's motion and award Experian its fees and costs for having to defend against this improper motion.

**BACKGROUND**

Plaintiff commenced this action on June 21, 2019, alleging that Experian willfully violated Sections 1681b(c)(1) and 1681e(a) of the FCRA by permitting one of its subscribers, Lend Tech, to obtain Plaintiff's student loan information. (*See* ECF No. 1.) Plaintiff claimed that, while Lend Tech held itself out as a mortgage refinance company and certified that it intended to issue firm offers of credit, it actually impermissibly resold Plaintiff's student loan information to another company, Unified Document Services, LLC ("UDS"). (*Id.*, ¶¶ 7, 10, 48-59.) Plaintiff, however, did not (and still does not) allege that Experian had any interactions with UDS, or that it had any knowledge that Lend Tech resold Plaintiff's credit information to UDS.

Experian moved to dismiss Plaintiff's complaint on August 14, 2019, arguing that Plaintiff failed to plausibly allege that Experian willfully violated the FCRA. (*See* ECF No. 25-1.) As to Plaintiff's first cause of action—the one at issue here—Experian argued that it did not violate Section 1681b because it had reason to believe, in light of Plaintiff's own allegations, that Lend Tech possessed a permissible purpose to obtain Plaintiff's prescreen report "based on Lend Tech's 'representation that it intended to use [the] report for the purpose of a firm offer of credit." (*Id.* at 11 (citing ECF No. 1, ¶ 48).) Experian further argued that Plaintiff failed to allege a violation of Section 1681e(a) because his purported "red flags" were nothing of the sort, and that Plaintiff failed "to identify a single process or procedure Experian lacked, or failed to follow, in evaluating whether Lend Tech had a permissible purpose." (*Id.* at 13.) Lastly, Experian argued that, even if Plaintiff could somehow establish a violation, he could not show that Experian's conduct was willful, as Plaintiff did not (and could not) allege that Experian knew or had any indication that "Lend Tech was not using the prescreen reports for their intended purpose." (*Id.* at 15.) For these three reasons, Experian moved to dismiss Plaintiff's first cause of action without leave to amend.

Plaintiff filed his opposition on August 26, 2019, relying principally on the Ninth Circuit's decision in *Pintos v. Pacific Creditors Ass'n*, 605 F.3d 665 (9th Cir. 2010). (*See* ECF No. 34 at 8-14.) Specifically, Plaintiff argued that "Experian cannot rely solely on Lend Tech's representation that it would use the reports for the permissible purpose of making firms offers of credit." (*Id.* at 13.) But, as Experian pointed out on reply, Plaintiff made no attempt to explain how Experian violated Section 1681b(c). Nor did he identify a single process Experian failed to implement in verifying Lend Tech's identity. Instead, Plaintiff premised his claim solely on Lend Tech's ultimate use of the report—*i.e.*, its sale of Plaintiff's student loan information to UDS. (ECF No. 37 at 9.) This, Experian explained, did not establish a violation of Section 1681b(c), because the fact that "Lend Tech may have ultimately

used Plaintiff's report for an impermissible purpose does not mean that Experian violated § 1681b." (*Id.* (citing *Harris v. Data Mgmt. & Mktg., Inc.*, 609 F. Supp. 2d 509, 514 (D. Md. 2009).)

On September 20, 2019, the Court granted Experian's motion in its entirety. (*See* ECF No. 52.) As to Plaintiff's first cause of action, the Court agreed that it failed for three independent reasons: (1) "Plaintiff admits that Experian had 'reason to believe' that it was furnishing Plaintiff's consumer report in accordance with Section 1681b(c)(1);" (2) "Plaintiff fails to identity a single process or procedure Experian lacked or failed to follow in evaluating whether Lend Tech had a permissible purpose;" and (3) "Plaintiff's Complaint is devoid of any factual allegations concerning Experian's state of mind or its knowledge that Lend Tech was not using the prescreen reports for their intended purpose," thereby defeating his claim for willfulness. (*Id.* at 4-5.) The Court further found that Plaintiff could not allege any facts that would cure these material defects, and therefore denied him leave to amend. (*Id.* at 6.)

Plaintiff filed the instant motion on January 2, 2020, arguing that the Court committed clear error in denying him leave to amend his claims arising from Experian's alleged failure to adequately verify Lend Tech's permissible purpose.[1] (ECF No. 61.) As in his opposition, Plaintiff's motion principally relies on *Pintos* to argue that he has validly stated a claim and that this Court committed clear error in concluding otherwise.

## STANDARD

The Ninth Circuit has made clear that reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). "[A] motion for

[1] Plaintiff does not challenge the portion of the Court's order dismissing his second cause of action with prejudice, which related to Experian's alleged disclosure of Plaintiff's total student loan debt to Lend Tech.

reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999). As this Court has recognized, "[m]otions for reconsideration 'are disfavored and are rarely granted.'" *Collins v. U.S. Citizenship & Naturalization Serv.*, No. 11-cv-9909-JFW-SSX, 2013 WL 776244, at *1 (C.D. Cal. Feb. 6, 2013) (quoting *Trust Corp. v. Aetna Casualty and Surety Co.*, 873 F. Supp. 1386, 1393 (D. Ariz. 1994)).

Importantly, reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Carroll*, 342 F.3d at 945; *see also* *Collins*, 2013 WL 776244, at *1 ("Reargument should not be used as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided.") (citation omitted). Nor should a motion for reconsideration "in any manner repeat any oral or written argument made in support of or in opposition to the original motion." *Ito v. Tokio Marine & Fire Ins. Co., Ltd.*, No. 03-cv-6835-JFW, 2007 WL 9735845, at *1 (C.D. Cal. Feb. 21, 2007) (citing Local Rule 7-18). And, "motions for reconsideration 'are not to be used to test new legal theories that could have been presented when the original motion was pending.'" *Collins*, 2013 WL 776244, at *1 (quoting *FDIC v. Jackson–Shaw Partners No. 46, Ltd.*, 850 F. Supp. 839, 845 (N.D. Cal. 1994)).

Under Local Rule 7-3, "[a] motion for reconsideration of the decision on any motion may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of failure to consider material facts presented to the Court before such

decision." L.R. 7-18. Violation of this rule can result in an award of attorneys' fees and costs incurred in opposing the motion. *See Figueroa v. Gates*, No. 00-cv-4158, 2002 WL 31572968, at *3 (C.D. Cal. Nov. 15, 2002) (citing L.R. 83-7).

**ARGUMENT**

Plaintiff's motion either repeats arguments previously raised in his opposition or raises points that could have been raised in that briefing. As such, his motion should be summarily denied. *See Carroll*, 342 F.3d at 945; *Collins*, 2013 WL 776244, at *1; *Reddy v. Gilbert Med. Transcription Serv., Inc.*, No. 10-cv-524-JFW-DTBX, 2010 WL 11509095, at *1 (C.D. Cal. June 11, 2010). And, even if Plaintiff had a valid basis to raise his arguments (he does not), Plaintiff fails to establish that this Court committed clear error. In any event, Plaintiff's unsupported theories and baseless accusations do not establish that Experian acted willfully. Accordingly, this Court should deny Plaintiff's motion and award Experian its fees and costs for having to defend against it.

**I. Plaintiff's Motion Is Improper**

Plaintiff makes two primary arguments in support of his claim that this Court committed clear error in dismissing his first cause of action with prejudice. First, he claims that the Court's ruling conflicts with the Ninth Circuit's decision in *Pintos*, 605 F.3d 665, arguing that *Pintos* permits a court to hold a CRA liable under the FCRA based purely on a subscriber's violation of the statute. Second, he argues that he can allege additional facts plausibly establishing Experian's willful violation of the FCRA. Because these are the same arguments Plaintiff made—or could have made—in opposing Experian's motion to dismiss, his motion must be denied.

Indeed, *Pintos* was the key authority Plaintiff relied upon in his opposition. (*See* ECF No. 34 at 12-14.) Contrary to his assertions, Experian has consistently maintained that a CRA cannot be held liable for a violation of the FCRA based purely on a subscriber's violation. (ECF No. 25-1 at 6-7.) In response, Plaintiff solely relied on *Pintos*, citing to the very same page of the case on which he now seeks to rely.

(*Compare* ECF No. 34 at 12-14; *with* ECF No. 61 at 11-12.) Plaintiff thus had ample opportunity to make any and all arguments under *Pintos* in his earlier briefing. Repeating arguments and raising new, but previously available, arguments in a motion for reconsideration is improper. *See* Reddy, 2010 WL 11509095, at *1.

Plaintiff's argument that he can allege additional facts permitting him to state a claim similarly fails. These additional facts merely repackage facts Plaintiff already pled in his complaint and argued in his opposition. And, even where Plaintiff does identify new facts, he offers no explanation for his failure to bring them to the Court's attention in his opposition.

First, Plaintiff claims he can allege additional facts plausibly showing that Experian's verification of Lend Tech was deficient because Experian permitted Lend Tech to obtain credit information for consumers in Colorado without confirming that Lend Tech possessed a license to conduct mortgage-related activities in Colorado as well as in California. But Plaintiff already made essentially the same allegations in his complaint, and thus they were before the Court in the briefing on Experian's motion to dismiss. Specifically, Plaintiff alleged that he is a Colorado resident, that Lend Tech obtained his credit information from Experian, and that a review of the "National Multistate Licensing System ('NMLS')" would have revealed that Lend Tech did "not possess any license whatsoever to engage in mortgage lending." (ECF No. 1, ¶¶ 7, 16, 27.)

Second, Plaintiff claims he can allege additional facts plausibly showing that Experian should have known Lend Tech was obtaining information outside the bounds of its approved permissible purpose when it requested information regarding consumers' student loans, rather than only their home loans. This allegation, too, is already in Plaintiff's complaint, and thus was already considered and rejected by the Court. (ECF No. 1, ¶¶ 9-11.)

Finally, Plaintiff claims he can allege additional facts plausibly showing that Experian's initial review of Lend Tech in June 2017 was flawed, apparently because

Experian gave Lend Tech an opportunity to submit additional documentation after Experian deemed its initial submission insufficient. But, again, the Court already considered and rejected Plaintiff's "red flags" theory. Moreover, Plaintiff fails to explain how this conduct runs contrary to Experian's obligation "to verify the identity of a new prospective user and the uses certified by such prospective user." 15 U.S.C. § 1681e(a). If anything, it only underscores Experian's diligence and confirms its adherence to its duties under the FCRA.

Simply put, Plaintiff's motion merely restates arguments the Court previously considered and rejected, *see* *Ito*, 2007 WL 9735845, at *1, or makes new arguments that he could and should have raised before. *See* *Carroll*, 342 F.3d at 945; *Collins*, 2013 WL 776244, at *1. His motion is therefore improper and should be denied.

## II. Plaintiff Does Not Establish Clear Error

Even if Plaintiff's motion did more than simply repeat points made in his opposition, or raise new arguments that could (and should) have been brought previously (which it does not), his motion does not support his claim that this Court committed clear error. Plaintiff fundamentally misunderstands *Pintos*, and the purportedly new facts he identifies do not establish that Experian failed to maintain reasonable procedures "to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report," 15 U.S.C. § 1681e(a), much less that Experian acted willfully.

### A. *Pintos* Does Not Support Plaintiff's Arguments.

In *Pintos*, the Ninth Circuit considered whether a collection agency, PCA, had a permissible purpose to pull the plaintiff's consumer report after the plaintiff's car had been towed and the debt transferred to PCA. 605 F.3d at 673. The Ninth Circuit answered in the negative, reasoning that the plaintiff "did not initiate the transaction that resulted in PCA requesting her credit report." *Id.* at 675. As a result, the Court concluded that "§ 1681b(a)(3)(A) did not authorize PCA to obtain the credit report on" the plaintiff because Plaintiff never initiated any transaction. *Id.* at 676. In other

words, the basis upon which PCA certified its purpose did not constitute a permissible purpose under Section 1681b. Thus, Experian did not have a reason to believe that PCA had a permissible purpose when it requested the plaintiff's consumer report in a transaction not initiated by the plaintiff.[2]

In contrast to *Pintos*, Experian had a reason to believe that Lend Tech had a permissible purpose under Section 1681b(c). That section "permits a consumer reporting agency to furnish a creditor with a consumer report in connection with a credit transaction not initiated by the consumer if 'the transaction consists of a firm offer of credit.'" *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004) (quoting 15 U.S.C. § 1681b(c)(1)(B)(i)). As the Court properly recognized, "Experian furnished Plaintiff's consumer report to Lend Tech based on Lend Tech's 'representation that it intended to use [the] report for the purpose of a firm offer of credit.'" (ECF No. 56 at 4 (citing ECF No. 1, ¶ 48).) Consequently, "Experian had 'reason to believe' that it was furnishing Plaintiff's consumer report in accordance with Section 1681b(c)(1)." (*Id.* (citing *Henderson v. Corelogic Nat'l Background Data, LLC*, 161 F. Supp. 3d 389, 397 n.7 (E.D. Va. 2016) ("[T]o show that a report was 'furnished' for a permissible purpose . . . a CRA need only show that it had 'reason to believe' that the report would be used for that purpose, and obtained appropriate certifications from its customers that the report would be used only for that purpose." (collecting authority)).)

As Experian explained in its briefing, Plaintiff "conflates the purpose for which a report is furnished and the purpose for which it is used." *Henderson*, 161 F. Supp. 3d at 397 n.7. "Decisional law interpreting § 1681(b), which imposes liability on CRAs who furnish reports for 'impermissible purposes,' demonstrates this distinction: to show that a report was 'furnished'. . . a CRA need only show that it

[2] Notably, the court in *Pintos* expressly refused to "opine on the meaning or scope of [Section] 1681b(c) or on the practice of obtaining information from credit reporting agencies to permit the extension of offers to prescreened customers," which is the provision at issue here. *Id.* at 676 n.2.

had 'reason to believe' that the report would be used for that purpose, and obtained appropriate certifications from its customers that the report would be used only for that purpose." *Id.* (collecting authority). By Plaintiff's own allegations, that is precisely what Experian did here. That Lend Tech may have ultimately used Plaintiff's report for an impermissible purpose does not mean that Experian violated Section 1681b. *See id.* (finding that whether a permissible purpose exists does not turn "on the 'use' of the reports"); *see also Harris*, 609 F. Supp. 2d at 514 ("[Plaintiff] argues that [CRA] violated Section 1681b by selling information from [plaintiff's] consumer report to NameSeeker, which NameSeeker did not use for transactions involving firm offers of credit. However, NameSeeker's ultimate use of [plaintiff's] information is not determinative of [CRA's] liability under the statute."); *Baker v. Trans Union LLC*, No. 10-cv-8038, 2010 WL 2104622, at *3 (D. Ariz. May 25, 2010) ("By alleging that TU Interactive is a reseller of credit information, Baker has pled herself out of a § 1681b claim arising from Trans Union's release of her information to TU Interactive" because the FCRA permits the transmission of consumer reports to resellers, and thus Trans Union had a "reason to believe" that a permissible purpose existed.).

Unlike *Pintos*, the purpose for which Lend Tech certified its use was permissible; Lend Tech's ultimate use of the report was not.[3] Because Lend Tech certified that it intended to issue firm offers of credit (and Experian had no indication otherwise), Experian had reason to believe that it was furnishing the report in accordance with Section 1681b(c). Nothing in *Pintos* suggests that a CRA with "reason to believe" that it was furnishing a consumer's report in accordance with

---

[3] It is unclear whether Lend Tech even violated Section 1681b(c). Plaintiff bases his claim on Lend Tech's purported misuse of his consumer report. But this would constitute a violation of Section 1681b(f), which prohibits an entity from using a report in a manner inconsistent with the purpose it certified. 15 U.S.C. § 1681b(f). Unlike *Pintos*, there is no dispute that Lend Tech certified that it intended to issue firms offers of credit, which is unquestionably a permissible purpose under Section 1681b(c). *Cf. Baker*, 2010 WL 2104622, at *7 ("If TU's purpose for releasing the information was permissible, so was TU Interactive's purpose in obtaining it.").

§ 1681b(c)(1) can nevertheless be held liable under the FCRA merely because the subscriber deceived a CRA. Because Plaintiff fails to allege that Experian had any indication that Lend Tech was reselling Plaintiff's consumer report to UDS, he fails to plausibly allege that Experian violated § 1681(b)(c)(1). This alone dooms Plaintiff's claim. *See*, *e.g.*, *Baker*, 2010 WL 2104622, at *4 ("Baker has incurably failed to state a claim against Trans Union under § 1681b. Therefore, her § 1681e(a) claim will similarly be dismissed without leave to amend.").

**B. Any Amendment Would Be Futile**

Even if the Court finds that Plaintiff can state a claim under Section 1681b (he cannot), Plaintiff's additional facts do not establish that Experian willfully violated its obligations under Section 1681e(a).

First, Plaintiff purports—for the first time—to redefine his proposed class to include only Colorado consumers. (ECF No. 61 at 10-11.) Plaintiff apparently believes that adjusting his class from consumers in all states to consumers in just Colorado, combined with his allegation that Lend Tech was not licensed in Colorado, merits permitting him leave to amend. But, as Plaintiff concedes, Lend Tech is a California corporation with its principal place of business in California. (*See, e.g. id.* at 3.) And, as this Court correctly found, "the California Department of Real Estate's website indicates that Lend Tech had obtained a corporate broker's license on August 11, 2017," which permitted it to "'perform services for both lenders and borrowers in connection with loans secured by liens on real property.'" (ECF No. 52 at 4-5 (quoting *Bock v. Cal. Capital Loans, Inc.*, 216 Cal. App. 4th 264, 269 (2013)).) Plaintiff offers no authority to suggest that a California real estate broker must obtain a license in every state in which it arranges loans, particularly where, as here, it was arranging loans for a California lender. His baseless conjecture to the contrary should be rejected.

Second, Plaintiff attempts to resurrect his argument that Experian implements a "set it and forget it" verification process. Plaintiff claims that Experian should have

recognized that Lend Tech was seeking information inconsistent with its stated purpose of offering mortgage refinancing when it requested consumers' student loan information. (ECF No. 61 at 12-13.) But again, Plaintiff already made these allegations in his complaint, and the Court already rejected them. (ECF No., ¶¶ 9-11 (alleging that Experian provided Lend Tech with Plaintiff's consumer report, from which UDS obtained Plaintiff's student loan information).) In any event, Experian cannot be expected to evaluate the underwriting criteria of lenders each time it furnishes a consumer report. Nor was it required to constantly monitor the information Lend Tech sought or verify Lend Tech's permissible purpose each time it obtained prescreen credit reports. *See* *Pietrafesa v. First Am. Real Estate Info. Servs., Inc.*, No. 05-cv-1450, 2007 WL 710197, at *4 (N.D.N.Y. Mar. 6, 2007) ("It would be unreasonable to require credit reporting agencies processing a high number of requests to independently investigate each and every request to determine its legitimacy." (citing *Boothe v. TRW Credit Data*, 557 F. Supp. 66, 71 (S.D.N.Y. 1982)). Plaintiff offers no authority to the contrary, and his attempt at imposing a strict liability standard should be rejected. *See* *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) ("The FCRA does not impose strict liability.").

Indeed, it is just as possible that Lend Tech requested information concerning consumers' student loans because this information is relevant to offering home mortgage refinancing, as it is that Lend Tech did so for a nefarious purpose. As a result, Plaintiff cannot establish a willful violation. *See* *Perl v. Plains Commerce Bank*, No. 11-cv-7972, 2012 WL 760401, at *2 (S.D.N.Y. Mar. 8, 2012) (dismissing claim that CRA willfully violated the FCRA, finding it "just as possible, based on the factual allegations, that [the CRA] made an innocent mistake"); *Braun v. Client Servs., Inc.*, 14 F. Supp. 3d 391, 398 (S.D.N.Y.) (dismissing willfulness claim where "Defendant's conduct could just as likely have been unintentional.").

Finally, Plaintiff appears to claim that Experian's verification process was

inadequate because Experian permitted Lend Tech to resubmit its subscriber application, with additional documentation, after Experian initially found its application inadequate. Plaintiff again offers no legal authority supporting his theory. If anything, his allegations demonstrate that Experian *was* sufficiently vetting its subscribers—Experian found Lend Tech's initial application inadequate and verified it as a subscriber only after Lend Tech provided new documentation. Again, a plaintiff alleging that a CRA willfully violated the FCRA must do more than allege facts that could be explained by a CRA's honest mistake. *See Perl*, 2012 WL 760401, at *2; *Braun*, 14 F. Supp. 3d at 398. Because "there is not a single allegation that Experian had any indication that Lend Tech did not send firm offers of credit or that it was simply reselling consumers' information to UDS," he cannot state a willful violation. (ECF No. 52 at 5.)

At bottom, Plaintiff's new allegations miss the mark for the same reason as his original claims. Plaintiff cites no authority to support his assertions that Experian was required to verify that Lend Tech had a license to operate in Colorado, that Experian cannot permit a potential subscriber to provide additional documentation if Experian finds that its initial submission is insufficient for verification, or that Experian must constantly monitor the types of information a subscriber requests. (*See* ECF No. 61 at 10-13.) Instead, Plaintiff offers nothing more than "generic and conclusory statements." (ECF No. 52 at 5.) But, as this Court properly recognized, such allegations are "insufficient to state a willfulness claim under Section 1681n." (ECF No 52 at 5 (collecting authorities).) And, as Experian explained in its briefing, a defendant does not act willfully under 15 U.S.C. § 1681n(a) unless its conduct was "objectively unreasonable" in light of "legal rules that were 'clearly established' at the time." *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 69-70 (2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

Because Plaintiff points to no legal rules violated by Experian, much less "clearly established" ones, he cannot establish a willful violation. *See id.*; *Banga v.*

*Experian Info. Sols., Inc.*, No. 09-cv-04867, 2013 WL 5539690, at *6 (N.D. Cal. Sept. 30, 2013) (dismissing willful violation where plaintiff fails to "cite any statutory language or any guidance from the courts of appeal or the Federal Trade Commission that renders Experian's reading of the FCRA objectively unreasonable"). Accordingly, his motion should be denied in its entirety.

## III. The Court Should Award Experian Its Fees And Costs

Local Rules 7-18 is clear: "No motion for reconsideration shall *in any manner* repeat any oral or written argument made in support of or in opposition to the original motion." L.R. 7-18 (emphasis added). Yet, as Experian pointed out during the parties' meet and confer, all of Plaintiff's arguments were or could have been raised in opposition to Experian's motion to dismiss. (ECF No. 60 at 2-3.)

For example, most—if not all—of Plaintiff's "additional facts" are nothing more than a restatement of what he has already pled. Plaintiff already pled that Experian permitted Lend Tech to obtain credit information for consumers residing in Colorado, including himself. (ECF No. 1, ¶¶ 9, 16, 27.) He already pled that Experian failed to verify that Lend Tech possessed a license to conduct mortgage-related activities. (*Id.*, ¶¶ 7, 9, 52-53.) He already pled that Lend Tech obtained consumer credit information extending beyond mortgage loan data. (*Id.*, ¶¶ 9-11, 66.) And the principal authority he relies upon is the same authority he relied upon in opposing Experian's motion, *Pintos.*

Consequently, Plaintiff has willfully violated this Court's prohibition on repeating prior arguments in seeking reconsideration. Not only did Plaintiff file a motion that violates Local Rule 7-18, he did so despite Experian's express warning that his arguments did not comply with this rule. The Court should therefore award Experian its attorneys' fees and costs for opposing Plaintiff's motion under Local Rule 83-7, which provides that "[t]he violation of or failure to conform to any of these Local Rules may subject the offending party or counsel to . . . the imposition of costs and attorneys' fees to opposing counsel, if the Court finds that the conduct

rises to the level of bad faith and/or a willful disobedience of a court order." *See* *Figueroa*, 2002 WL 31572968, at *3 (ordering defendant to pay plaintiff's reasonable attorneys' fees for defending against motion that failed to comply with Local Rule 7-18).

**CONCLUSION**

Because Plaintiff's motion for reconsideration is devoid of any proper argument, and because Plaintiff's arguments, even if proper, fail to establish that the Court committed clear error in dismissing his complaint against Experian with prejudice, Plaintiff's motion should be denied. Given his blatant violation of this District's Local Rules, the Court should award Experian its attorneys' fees and costs for having to defend against Plaintiff's motion.

Dated: January 13, 2020

JONES DAY

By: */s/ Ryan D. Ball*

Richard J. Grabowski
Ryan D. Ball
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612.4408

*Attorneys for Defendant*
*Experian Information Solutions, Inc.*