1

2

3

4

5

6

7

8 # UNITED STATES DISTRICT COURT

9 ## CENTRAL DISTRICT OF CALIFORNIA

10

11 | BRYCE ABBINK, individually and on behalf of all others similarly situated,

12

13                 Plaintiff,

14     v.

15 EXPERIAN INFORMATION SOLUTIONS, INC., *et al.*

16                 Defendants.

17

18

19

20

Case No. 8:19-cv-01257-JFW-PJWx

Hon. John F. Walter

**[PROPOSED] STATEMENT OF DECISION DENYING PLAINTIFF BRYCE ABBINK'S MOTION FOR RECONSIDERATION**

Date:      February 3, 2020
Time:      1:30 p.m.
Location: 7A

Complaint Filed: June 21, 2019

21

22

23

24

25

26

27

28

## STATEMENT OF DECISION

Plaintiff Bryce Abbink ("Plaintiff") seeks reconsideration of the Court's order dismissing his claims against Defendant Experian Information Solutions, Inc. ("Experian") with prejudice.   In his complaint, Plaintiff alleged that Experian willfully violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C § 1681 *et seq.*, by furnishing his consumer report to Defendant Lend Tech Loans, Inc. ("Lend Tech"), a purported mortgage lender, who allegedly lacked a permissible purpose and impermissibly re-sold his student loan information to Unified Document Services, LLC ("UDS").

On August 14, 2019, Experian moved to dismiss Plaintiff's Complaint (ECF No. 1, "Compl.") pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff had failed to plausibly allege that Experian willfully violated the FCRA. (*See* ECF No. 25.)  The Court granted Experian's motion in its entirety, without leave to amend, on September 20, 2019. (ECF No. 52.)

On January 2, 2020, Plaintiff filed a motion for reconsideration of the Court's order, arguing that the Court committed clear error in denying him leave to amend. (ECF No. 61.)   Experian filed its opposition on January 13, 2020, seeking its attorneys' fees and costs based on Plaintiff's disregard for Ninth Circuit precedent and this District's Local Rules. (ECF No. 62.)  Plaintiff filed his reply on January 17, 2020. (ECF No. 65.)

Based on the arguments advanced by the parties, and for the reasons set forth below, the Court **DENIES** Plaintiff's motion and **AWARDS** Experian its attorneys' fees and costs incurred in defending against Plaintiff's motion.

## BACKGROUND

Plaintiff commenced this action on June 21, 2019, alleging that Experian willfully violated Sections 1681b(c)(1) and 1681e(a) of the FCRA by permitting one of its subscribers, Lend Tech, to obtain Plaintiff's student loan information.  (*See* ECF No. 1.)  Plaintiff claimed that, while Lend Tech held itself out as a mortgage

refinance company and certified that it intended to issue firm offers of credit, it actually impermissibly resold Plaintiff's student loan information to another company, Unified Document Services, LLC ("UDS"). (*Id.*, ¶¶ 7, 10, 48-59.) Plaintiff, however, did not (and still does not) allege that Experian had any interactions with UDS, or that it had any knowledge that Lend Tech resold his credit information to UDS.

Experian moved to dismiss Plaintiff's complaint on August 14, 2019, arguing that Plaintiff failed to plausibly allege that Experian willfully violated the FCRA. (*See* ECF No. 25-1.)  As to Plaintiff's first cause of action—the one at issue here—Experian argued that it did not violate Section 1681b because it had reason to believe that Lend Tech possessed a permissible purpose to obtain Plaintiff's prescreen report "based on Lend Tech's 'representation that it intended to use [the] report for the purpose of a firm offer of credit.'" (*Id.* at 11 (citing ECF No. 1, ¶ 48).)  Experian further argued that Plaintiff failed to allege a violation of Section 1681e(a) because the purported "red flags" he identified were nothing of the sort, and that Plaintiff failed "to identify a single process or procedure Experian lacked, or failed to follow, in evaluating whether Lend Tech had a permissible purpose." (*Id.* at 13.)  Lastly, Experian argued that Plaintiff could not show that Experian's conduct was willful, as Plaintiff did not (and could not) allege that Experian knew or had any indication that "Lend Tech was not using the prescreen reports for their intended purpose." (*Id.* at 15.)

Plaintiff filed his opposition on August 26, 2019, relying principally on the Ninth Circuit's decision in *Pintos v. Pacific Creditors Ass'n*, 605 F.3d 665 (9th Cir. 2010). (*See* ECF No. 34 at 8-14.)  Specifically, Plaintiff argued that "Experian cannot rely solely on Lend Tech's representation that it would use the reports for the permissible purpose of making firms offers of credit." (*Id.* at 13.)  But Plaintiff failed to explain how Experian violated Section 1681b(c).  Nor did he identify a single process Experian failed to implement in verifying Lend Tech's identity.  Instead,

[PROPOSED] STATEMENT OF DECISION DENYING
PLAINTIFF'S MOTION FOR RECONSIDERATION
Case No. 8:19-cv-01257-JFW-PJWx

Plaintiff premised his claim solely on Lend Tech's ultimate use of the report—*i.e.*, its sale of Plaintiff's student loan information to UDS.  (ECF No. 37 at 9.)  But this did not establish a violation of Section 1681b(c), because the fact that Lend Tech may have ultimately used Plaintiff's report for an impermissible purpose does not mean that Experian violated Section 1681b. *See Harris v. Data Mgmt. & Mktg., Inc.*, 609 F. Supp. 2d 509, 514 (D. Md. 2009)).  This was particularly true where, as here, Plaintiff did not (and could not) allege that Experian had any knowledge of Lend Tech's purported misconduct.

On September 20, 2019, the Court granted Experian's motion in its entirety. (*See* ECF No. 52.)  As to Plaintiff's first cause of action, the Court found that it failed for three reasons: (1) "Plaintiff admits that Experian had 'reason to believe' that it was furnishing Plaintiff's consumer report in accordance with Section 1681b(c)(1);" (2) "Plaintiff fails to identity a single process or procedure Experian lacked or failed to follow in evaluating whether Lend Tech had a permissible purpose;" and (3) "Plaintiff's Complaint is devoid of any factual allegations concerning Experian's state of mind or its knowledge that Lend Tech was not using the prescreen reports for their intended purpose," thereby defeating his claim for willfulness. (*Id.* at 4-5.) The Court further found that Plaintiff could not allege any facts that would cure these material defects, and therefore denied him leave to amend.  (*Id.* at 6.)

Plaintiff moved for reconsideration of the Court's order on January 2, 2020, arguing that the Court committed clear error in denying him leave to amend his claims arising from Experian's alleged failure to adequately verify Lend Tech's permissible purpose.[1] (ECF No. 61.)  Following Experian's opposition, (ECF 62), Plaintiff filed his reply, (ECF 65), further arguing that this Court committed clear error.[2]

---

[1] Plaintiff does not challenge the portion of the Court's order dismissing his second cause of action with prejudice, which related to Experian's alleged disclosure of Plaintiff's total student loan debt to Lend Tech.

[2] In his Reply, Plaintiff cites to a Consumer Financial Protection Bureau enforcement action against Lend Tech. (ECF No. 65 at 1 n.1.)  It is unclear how this

1

## LEGAL STANDARD

2      Reconsideration is an "extraordinary remedy, to be used sparingly in the

3 interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342

4 *F.3d 934, 945 (9th Cir. 2003)*. "[A] motion for reconsideration should not be granted,

5 absent highly unusual circumstances, unless the district court is presented with newly

6 discovered evidence, committed clear error, or if there is an intervening change in

7 the controlling law." *389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th

8 *Cir. 1999)*.  As this Court has stated, "[m]otions for reconsideration 'are disfavored

9 and are rarely granted.'" *Collins v. U.S. Citizenship & Naturalization Serv.*, No. 11-

10 cv-9909-JFW-SSX, 2013 WL 776244, at *1 (C.D. Cal. Feb. 6, 2013) (quoting *Trust*

11 *Corp. v. Aetna Casualty and Surety Co.*, 873 F. Supp. 1386, 1393 (D. Ariz. 1994)).

12      Importantly, reconsideration "may not be used to raise arguments or present

13 evidence for the first time when they could reasonably have been raised earlier in the

14 litigation." *Carroll*, 342 F.3d at 945; *see also Collins*, 2013 WL 776244, at *1.  Nor

15 should a motion for reconsideration "in any manner repeat any oral or written

16 argument made in support of or in opposition to the original motion." *Ito v. Tokio*

17 *Marine & Fire Ins. Co., Ltd.*, No. 03-cv-6835-JFW, 2007 WL 9735845, at *1 (C.D.

18 Cal. Feb. 21, 2007) (citing Local Rule 7-18).  And, "motions for reconsideration 'are

19 not to be used to test new legal theories that could have been presented when the

20 original motion was pending.'" *Collins*, 2013 WL 776244, at *1 (quoting *FDIC v.*

21 *Jackson–Shaw Partners No. 46, Ltd.*, 850 F. Supp. 839, 845 (N.D. Cal. 1994)).

22      Under Local Rule 7-18, "[a] motion for reconsideration of the decision on any

23 motion may be made only on the grounds of (a) a material difference in fact or law

24 from that presented to the Court before such decision that in the exercise of

25 reasonable diligence could not have been known to the party moving for

26 reconsideration at the time of such decision, or (b) the emergence of new material

27 is relevant to the instant motion, as Experian is not involved in that action.  Moreover,
the allegations of that action only confirm the fact that Experian had no indication or

28 knowledge that Lend Tech was acting improperly.

facts or a change of law occurring after the time of such decision, or (c) a manifest showing of failure to consider material facts presented to the Court before such decision." L.R. 7-18.  Violation of this rule can result in an award of attorneys' fees and costs incurred in opposing the motion. *See Figueroa v. Gates*, No. 00-cv-4158, 2002 WL 31572968, at *3 (C.D. Cal. Nov. 15, 2002) (citing L.R. 83-7).

## DISCUSSION

Plaintiff's motion recycles the same arguments and case law he relied upon in opposing Experian's motion to dismiss.  Plaintiff does not claim that there is "a material difference in fact or law from that presented to the Court." L.R. 7-18.  Nor does he rely upon "the emergence of new material facts or a change of law." *Id.* Instead, he claims that the Court committed clear error in applying *Pintos*.  The Court disagrees.

As the Court previously explained, Experian had reason to believe that Lend Tech had a permissible purpose based on Lend Tech's representation that it intended to offer firm offers of credit, and Experian did not have any indication or knowledge that Lend Tech was reselling Plaintiff's information to UDS.  Nothing in Plaintiff's motion establishes otherwise.  Accordingly, Plaintiff cannot establish a willful violation of the FCRA.

## I.   **Plaintiff Does Not Establish Clear Error**

Plaintiff advances two primary arguments for his claim that this Court committed clear error.  First, Plaintiff claims that this Court's ruling conflicts with *Pintos*, 605 F.3d 665, which, according to Plaintiff, allows a CRA to be held liable under the FCRA based purely on a subscriber's violation of the statute.  Second, Plaintiff argues that he can allege additional facts plausibly establishing Experian's willful violation of the FCRA.  Because these are the same arguments Plaintiff made—or could have made—in opposing Experian's motion to dismiss, his motion is denied.

1

**A.     *Pintos* Does Not Support Plaintiff's Arguments.**

2

As in his opposition to Experian's motion to dismiss, Plaintiff relies on *Pintos*

3

as his key authority, citing to the very same page of the case that he did in his

4

opposition. (*Compare* ECF No. 34 at 12-14, *with* ECF No. 61 at 11-12.)   As

5

discussed, repeating arguments and raising new, but previously available, arguments

6

in a motion for reconsideration is improper.  *See Collins*, 2013 WL 776244, at *1.

7

Moreover, *Pintos* does not save Plaintiff's claim.  In *Pintos*, the Ninth Circuit

8

considered whether a collection agency, PCA, had a permissible purpose to pull the

9

plaintiff's consumer report after the plaintiff's car had been towed and the debt

10

transferred to PCA.  605 F.3d at 673.  The Ninth Circuit answered in the negative,

11

reasoning that the plaintiff "did not initiate the transaction that resulted in PCA

12

requesting her credit report."  *Id.* at 675.  As a result, the Court concluded that

13

"§ 1681b(a)(3)(A) did not authorize PCA to obtain the credit report on" the plaintiff

14

because that section requires the consumer to initiate a transaction, which the plaintiff

15

never did.  *Id.* at 676.  In other words, the basis upon which PCA certified its purpose

16

did not constitute a permissible purpose under Section 1681b.  Thus, in that case,

17

Experian did not have a reason to believe that PCA had a permissible purpose when

18

it requested the plaintiff's consumer report in a transaction not initiated by the

19

plaintiff.

20

In contrast to *Pintos*, Experian had reason to believe that Lend Tech had a

21

permissible purpose under Section 1681b(c).  That section "permits a consumer

22

reporting agency to furnish a creditor with a consumer report in connection with a

23

credit transaction not initiated by the consumer if 'the transaction consists of a firm

24

offer of credit.'"  *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839

25

(5th Cir. 2004) (quoting 15 U.S.C. § 1681b(c)(1)(B)(i)).  Because "Experian

26

furnished Plaintiff's consumer report to Lend Tech based on Lend Tech's

27

'representation that it intended to use [the] report for the purpose of a firm offer of

28

credit,'" (ECF No. 56 at 4 (citing ECF No. 1, ¶ 48)), "Experian had 'reason to believe'

that it was furnishing Plaintiff's consumer report in accordance with Section 1681b(c)(1)." (*Id.* (citing *Henderson v. Corelogic Nat'l Background Data, LLC*, 161 F. Supp. 3d 389, 397 n.7 (E.D. Va. 2016))).

Plaintiff "conflates the purpose for which a report is furnished and the purpose for which it is used." *Henderson*, 161 F. Supp. 3d at 397 n.7. "Decisional law interpreting § 1681(b) . . . demonstrates this distinction: to show that a report was 'furnished'. . . a CRA need only show that it had 'reason to believe' that the report would be used for that purpose, and obtained appropriate certifications from its customers that the report would be used only for that purpose." *Id.* (collecting authority). Unlike *Pintos*, the purpose for which Lend Tech certified its use was permissible; Lend Tech's ultimate use of the report was not. Because Lend Tech certified that it intended to issue firm offers of credit (and Experian had no indication otherwise), Experian had reason to believe that it was furnishing the report in accordance with Section 1681b(c). Nothing in *Pintos* suggests that a CRA with "reason to believe" that it was furnishing a consumer's report in accordance with § 1681b(c)(1) can nevertheless be held liable under the FCRA merely because the subscriber deceived a CRA. In fact, the *Pintos* court expressly refused to "opine on the meaning or scope of . . . 1681b(c) or on the practice of obtaining information from credit reporting agencies to permit the extension of offers to prescreened customers." *Pintos*, 605 F.3d at 676 n.2.

Because Plaintiff admits that Experian had reason to believe that Lend Tech had a permissible purpose based on Lend Tech's certification, and because he fails to allege that Experian had any indication that Lend Tech was reselling Plaintiff's consumer report to UDS, he cannot allege that Experian violated § 1681b(c)(1).

**B.     Any Amendment Would Be Futile**

Even if Plaintiff could state claim under Section 1681b, Plaintiff's additional facts do not establish that Experian willfully violated its obligations under Section 1681e(a). As with Plaintiff's arguments regarding *Pintos*, Plaintiff's additional

1   arguments and allegations were all made—or could have been made—in Plaintiff's
2   opposition.

3          First, Plaintiff seeks to redefine his proposed class to include only Colorado
4   consumers.  (ECF No. 61 at 10-11.)  Plaintiff apparently believes that adjusting his
5   class in this way, combined with his allegation that Lend Tech was not licensed in
6   Colorado, merits permitting him leave to amend.  But the Court has already found
7   evidence indicating that Lend Tech "had obtained a corporate broker's license on
8   August 11, 2017," which permitted it to "'perform services for both lenders and
9   borrowers in connection with loans secured by liens on real property.'" (ECF No. 52
10  at 4-5 (quoting *Bock v. Cal. Capital Loans, Inc.*, 216 Cal. App. 4th 264, 269 (2013)).)
11  Plaintiff cites no authority suggesting that a California real estate broker must obtain
12  a license in every state in which it arranges loans for a mortgage lender in California.

13         Second, Plaintiff claims that Experian should have recognized that Lend Tech
14  was seeking information inconsistent with its stated purpose of offering mortgage
15  refinancing when it requested consumers' student loan information.  (ECF No. 61 at
16  12-13.)  Again, Plaintiff already made these allegations in his complaint, which the
17  Court considered and rejected.  In any event, the FCRA does not require Experian to
18  evaluate the underwriting criteria of lenders each time it furnishes a consumer report.
19  Nor is it required to constantly monitor the information Lend Tech sought or verify
20  Lend Tech's permissible purpose each time it obtained prescreen credit reports.  *See*
21  *Pietrafesa v. First Am. Real Estate Info. Servs., Inc.*, No. 05-cv-1450, 2007 WL
22  *710197, at \*4 (N.D.N.Y. Mar. 6, 2007).*  Plaintiff's attempt at imposing a strict
23  liability standard is rejected. *See Guimond v. Trans Union Credit Info. Co.*, 45 F.3d
24  *1329, 1333 (9th Cir. 1995)* ("The FCRA does not impose strict liability.").  Indeed,
25  Plaintiff offers no authority to support his speculative theories, including Plaintiff's
26  assertions regarding iScreen.  Regardless, because it is just as possible Lend Tech
27  requested the information for a permissible purpose as it is that Lend Tech did so for
28  a nefarious one, Plaintiff cannot establish a willful violation.  *See Perl v. Plains*

1  *Commerce Bank*, No. 11-cv-7972, 2012 WL 760401, at *2 (S.D.N.Y. Mar. 8, 2012);

2  *Braun v. Client Servs., Inc.*, 14 F. Supp. 3d 391, 398 (S.D.N.Y. 2014).

3      Finally, Plaintiff claimed that Experian's verification process was inadequate

4  because Experian permitted Lend Tech to resubmit its subscriber application, with

5  additional documentation, after Experian initially found its application inadequate.

6  Plaintiff again offers no legal authority supporting his theory.  If anything, this only

7  further demonstrates that Experian *was* sufficiently vetting its subscribers—Experian

8  found Lend Tech's initial application inadequate and verified it as a subscriber only

9  after Lend Tech provided new documentation.  Again, a plaintiff alleging that a CRA

10  willfully violated the FCRA must do more than allege facts that could be explained

11  by a CRA's honest mistake.  *See Perl*, 2012 WL 760401, at *2; *Braun*, 14 F. Supp.

12  3d at 398.  Because "there is not a single allegation that Experian had any indication

13  that Lend Tech did not send firm offers of credit or that it was simply reselling

14  consumers' information to UDS," he cannot state a willful violation.  (ECF No. 52 at

15  5.)

16      At bottom, Plaintiff's new allegations miss the mark for the same reason as his

17  original claims. Plaintiff cites no authority to support his assertions that Experian was

18  required to verify that Lend Tech had a license to operate in Colorado, that Experian

19  cannot permit a potential subscriber to provide additional documentation if Experian

20  finds that its initial submission is insufficient for verification, or that Experian must

21  constantly monitor the types of information a subscriber requests.  (*See* ECF No. 61

22  at 10-13.)   Instead, Plaintiff offers nothing more than "generic and conclusory

23  statements." (ECF No. 52 at 5.)  As the Court previously explained, such allegations

24  are "insufficient to state a willfulness claim under Section 1681n." (ECF No 52 at 5

25  (collecting authorities).)

26      Moreover, a defendant does not act willfully under 15 U.S.C. § 1681n(a)

27  unless its conduct was "objectively unreasonable" in light of "legal rules that were

28  'clearly established' at the time." *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 69-70 (2007)

[PROPOSED] STATEMENT OF DECISION DENYING
PLAINTIFF'S MOTION FOR RECONSIDERATION
Case No. 8:19-cv-01257-JFW-PJWx

(quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).  Because Plaintiff points to no legal rules violated by Experian, much less "clearly established" ones, he cannot establish a willful violation.  *See id.*; *Banga v. Experian Info. Sols., Inc.*, No. 09-cv-04867, 2013 WL 5539690, at *6 (N.D. Cal. Sept. 30, 2013).  Accordingly, any amendment would be futile and this case remains dismissed with prejudice.

## II.   The Court Awards Experian Its Fees And Costs

Local Rule 7-18 is clear: "No motion for reconsideration shall *in any manner* repeat any oral or written argument made in support of or in opposition to the original motion." L.R. 7-18 (emphasis added).  Because Plaintiff's additional facts are nothing more than a restatement of what he has already pled, and because the principal authority he relies upon is the same authority he already relied upon in opposing Experian's motion (*i.e.*, *Pintos*), his motion amounts to willful disobedience of L.R. 7-18.  This was discussed during the parties' meet and confer. (*See* ECF No. 60.)  Yet Plaintiff filed his motion anyway.  This is bad faith.  As such, pursuant to Local Rule 83-7, the Court awards Experian its attorneys' fees and costs for opposing Plaintiff's motion.

## CONCLUSION

Because Plaintiff's motion for reconsideration lacks any proper argument, and because Plaintiff's arguments, even if proper, fail to establish that the Court committed clear error in dismissing his complaint against Experian with prejudice, Plaintiff's motion is **DENIED**.  Pursuant to Local Rule 83-7, the Court **AWARDS** Experian its attorneys' fees and costs for opposing Plaintiff's motion.

IT IS SO ORDERED.

Dated: _____, 2020         _____
                                     The Honorable John F. Walter
                                     United States District Court Judge

[PROPOSED] STATEMENT OF DECISION DENYING
PLAINTIFF'S MOTION FOR RECONSIDERATION
Case No. 8:19-cv-01257-JFW-PJWx